1789

Janet T. SEXTON, Respondent v. Patrick B. SEXTON and Neely Hunter Sexton, Sr., and Neely Hunter Sexton, Sr., as personal representative of the estate of Frieda P. Sexton, deceased, Appellants.

(416 S.E. (2d) 649)

Court of Appeals

38

*Thomas F. McDow,* and *Jack Leader,* Rock Hill, *for appellants.*

*Melvin L. Roberts,* York, *for respondent.*

Heard Jan. 22, 1992; Decided Mar. 16, 1992.

Reh. Den. Apr. 13, 1992.

CURETON, Judge:

In this divorce action, Patrick B. Sexton (husband) appeals from the award of alimony, the division of property, and the award of attorney fees to the wife. Neely Hunter Sexton, Sr., father of the husband (father) appeals from the trial court's holding that property titled in his name was marital property. We affirm in part, reverse in part, and remand in part.

## HUSBAND'S APPEAL

The husband appeals from two orders of the family court. The first is dated October 21, 1988, and the second is dated October 26, 1989.

The 1988 order divided the personal property, decreed the divorce, determined custody, and set child support. The 1989 order divided the real property, awarded alimony, addressed marital debts, and granted attorney fees.

The husband first asserts the trial judge erred in finding the October 1988 order was unappealed and res judicata. We agree. It is clear the October 1988 order either reserved for later determination or did not address sev-

eral issues. The October 1988 order was not immediately appealable because it did not dispose of the whole subject matter in litigation. *Bolding v. Bolding*, 283 S.C. 501, 323 S.E. (2d) 535 (Ct. App. 1984).

The husband next asserts the trial court erred in ■ adopting findings and rulings from a temporary order in establishing the alimony award in this case. A temporary hearing was held before the Honorable Kenneth M. Powell. The temporary hearing resulted in an order dated March 10, 1988. Pursuant to former Family Court Rule 52, the findings of fact in that order were based only upon the affidavits of the parties, their financial declarations, and the statements of their attorneys. Judge Powell found the husband worked twenty-four hours per week and earned $13.00 per hour. Based on this hourly rate of pay, he then found the husband had an earning capability of over $500.00 per week. Judge Powell ordered payment of child support in the amount of $95.00 per week.

At the divorce hearing on October 5, 1988, the husband did not appear after notice. At that hearing before Judge Mendenhall, the only mention of the husband's employment was a statement by the wife that the husband was still capable of working and paying support. Judge Mendenhall granted the wife a divorce and confirmed previous orders. He also reserved alimony, attorney fees, and the matter of delinquent child support until the husband could be apprehended and brought before the court. Additionally, Judge Mendenhall awarded sole ownership of a jointly owned automobile and the parties' furniture to the wife. He credited the husband with one-half of the value of the personal property against delinquent child support.

In March 1989, the husband sought a reduction in child support. The request resulted in a hearing before Judge Wilburn on March 20, 1989. Judge Wilburn held the husband had reduced his income by his own voluntary act. The husband's request for a reduction was denied.

The next hearing was before Judge McChesney in August 1989. According to Judge McChesney's order of October 26, 1989, it was "a final hearing and determination of alimony, equitable distribution of the marital assets, attorney fees, and apportionment of the marital debts." The husband's unrebut-

ted testimony at this hearing was he earned $4.00 per hour at his regular employment and up to $44.00 per day building decks.[1] Judge McChesney ordered the husband to pay alimony of $375.00 per month. The order stated in part:

> Nevertheless, the Court has consistently found, and I find from the testimony before me that [the husband] has an earning capacity in excess of $500 per week based upon the record and his further testimony at this hearing that he is employed at a regular job and in addition thereto, works refinishing furniture and carpenter work, having two jobs in progress at this time. His testimony concerning his earnings from outside his employment is not credible and I find he has the earning capacity to earn in excess of $500 per week, his earning capacity never having been reduced as shown by any competent testimony. I find he is deliberately keeping his income low in an attempt to reduce the support he may be ordered to pay.

We have read the transcript and cannot arrive at an earning capacity of $500.00 per week. The husband testified at the final hearing he earned $4.00 per hour on his present job. He did not testify how many hours he worked per week. Assuming he works a normal workweek of forty hours, he would earn a gross salary of $160.00 per week. He also testified he was building decks which earned him $44.00 per day but gave no hint of how much time he spent on this job or his average earnings from it. Assuming he worked on the weekend when he was off from the other job, he would earn only $88.00 per week from that endeavor. While the trial judge disbelieved this testimony, he gave no basis for concluding the husband could then earn $500.00 per week except for the fact he relied on previous orders. Referring now to the temporary hearing before Judge Powell, the only evidence before the court showed the husband worked twenty-four hours on the weekend at a tire company and earned $13.00 per hour. By multiplying $13.00 by the usual workweek of forty hours, Judge Powell concluded the husband was capable of earning over

---

[1] Although not clear from the record, it is inferable the husband worked forty hours per week at the $4.00 per hour job and built the decks on the weekends and after working hours.

$500.00 per week. No evidence suggests the husband could have worked a full forty hours per week at the tire company or would have been paid $13.00 per hour for weekday work as opposed to weekend work. Also, there is no evidence in the record explaining why the husband is no longer employed at that job. In her complaint, the wife sought combined child support and alimony in the amount of only $125.00 per week.[2]

■ The decision to grant alimony and the amount granted are discretionary with the trial judge. *Williams v. Williams*, 297 S.C. 208, 375 S.E. (2d) 349 (Ct. App. 1988). At the time the alimony award was entered, nine factors were to be considered in awarding alimony including the ability of the husband to pay. *Johnson v. Johnson*, 288 S.C. 270, 341 S.E. (2d) 811 (Ct. App. 1986). While conceivably there may have been some basis to award alimony in the amount ordered, we must reverse the award where, as here, the award is based on an unsupported finding of the husband's earning capacity.

We, therefore, reverse the alimony award and remand for a redetermination based on the husband's present earning ability and such other appropriate factors as are set forth in S.C. Code Ann. Section 20-3-130 (1976 and Supp. 1991).

■ The husband next argues that assuming the house is marital property, the court did not equitably divide it.

The only property before the court at the final hearing was the house. Both the husband and his father claimed the house belonged to the father because the father had never conveyed title to the parties. The issue of ownership is addressed below. We discuss here only the division.

The wife's testimony indicates she and the husband contributed approximately $17,000 to the construction of the house. She testified both she and the husband provided labor in the construction of the house. She acknowledged a portion of the $17,000 contribution came from some sort of lump-sum payment from the husband's past employer.[3] She also testified they owed the father approximately $18,000 in construction costs. The husband, his father, and several other witnesses

---

[2] The wife did not move to amend her complaint. The combined awards of child support and alimony amount to $182.20 per week.

[3] The payment was in the gross amount of $25,000.

testified the house was constructed entirely by the father and his family and the wife did no work on the house. It is clear from the record the father was the primary contractor for the house. While there is conflicting testimony as to the amount of labor performed by the husband, the father agreed it was at least ten percent. It is also clear the labor performed by the wife was insubstantial.

The house has an approximate value of $50,000.[4] The trial judge divided the marital real property equally finding "[t]he unappealed decree of divorce apportioned the marital property on a fifty-fifty basis which I find to be reasonable under the circumstances and to which I should be bound in apportioning the real property. I independently find the marital real property should be apportioned on a fifty-fifty basis." The judge further stated he had considered the equitable distribution of marital property statute and the cases decided under it and found the fifty-fifty division to be appropriate.[5]

The trial judge made no specific findings regarding any of the factors enumerated in S.C. Code Ann. Section 20-7-472 (Supp. 1991). The mere recitation that he considered the statute and case law provides us with no means to review his reasoning for the award. Our independent review of the record convinces us the judge abused his discretion in awarding the wife fifty percent of the house. We base this on the following facts: (1) the husband apparently earned more than the wife during the marriage; (2) presumably much of the money paid toward the construction of the house came from the husband's settlement with his employer; (3) the husband and his family contributed substantially all of the labor to build the house; (4) the husband's father advanced construction costs; (5) the parties lived in the house only one year prior to the initiation of this action; and (6) no value was placed on the wife's indirect contributions to the accumulation of this asset. The fact a substantial portion of the value of the house is attributable to contributions made by the husband's family should be a consideration in this case. See *Bowyer v. Sohn*, 290

---

[4] The trial court valued the house and three acres of land at $56,000.
[5] The divorce decree in 1988 divided only the personal property on a fifty-fifty basis.

S.C. 249, 349 S.E. (2d) 403 (1986); *Bungener v. Bungener*, 291 S.C. 247, 353 S.E. (2d) 147 (Ct. App. 1987). We, therefore, remand this issue to the family court for a more equitable division of the real estate.

The husband appeals the court's award of attorney fees of $9,000 to the wife. The attorney fee affidavit was introduced into the record without objection. The affidavit addresses most pertinent attorney fee factors. A detailed statement of time and charges is attached to the affidavit. The award of $9,000 was less than the requested amount of $12,000. The husband now claims proper findings were not made, or if made, they lacked support in the evidence. We disagree. The record adequately supports the award. *Lynn v. Lynn*, 290 S.C. 359, 350 S.E. (2d) 403 (Ct. App. 1986).

## FATHER'S APPEAL

The appellant, Neely H. Sexton, Sr., is the father of Patrick B. Sexton and the personal representative of his deceased wife, Frieda P. Sexton. According to the wife's complaint, Neely H. Sexton, Sr. and his wife were made parties to the divorce action "to have the court fully inquire into the marital assets . . . and apportion the property found in the name of [the husband's parents]." The father's answer denies this allegation. His answer alleges he offered to build a house for the wife and husband for cost with title to be transferred upon payment of his costs. He then asserts that because he has not received payment of costs, the wife has no interest in the house. Additionally, the husband's father and mother signed an affidavit in July 1988 which stated the father agreed to build *the husband* a house for costs. Indeed, the father confirmed in his testimony and brief that he agreed to build the parties a house for costs.

The trial court found an oral agreement by the husband's mother and father to build and convey a house to the husband and wife for costs. While not specific, the court implicitly found the father's answer and the affidavit were sufficient writings to satisfy the statute of frauds.[6] We

---

[6] While the law of part performance as a means of removing an oral contract from the operation of the statute of frauds is mentioned in the "Law" section of the appealed order and is argued by both parties on appeal, the trial judge made no findings on this theory. We do not think his ruling was premised on that principle.

find the answer of the father together with his affidavit are sufficient writings to satisfy the statute of frauds. See *Walker v. Preacher*, 188 S.C. 431, 199 S.E. 675 (1938) (pleading admitting a parol agreement may constitute sufficient writing). We hold the love and affection the father and mother had for their son and daughter-in-law together with their promise to pay the father his actual costs is sufficient consideration to support the agreement to convey title of the house upon payment of costs. 17 C.J.S. *Contracts* Sections 91, 92 (1963). Additionally, a loss or detriment to the promise has been held sufficient consideration for a contract. *Theodore v. Mozie*, 230 S.C. 216, 95 S.E. (2d) 173 (1956). The husband and wife suffered a detriment by putting their money into the construction of the house based on the father's acquiescence and promise to convey upon completion. Thus, the father's argument concerning an incomplete gift and the lack of standing by the wife to demand specific performance is without merit.[7]

The question, however, of how much land the father ▮ would convey to the husband and wife is a problem. The father claims he only agreed to convey the house and his son and daughter-in-law could buy as much land as they wanted at the time they paid him the costs for building the house. There is a bare assertion by the wife that the father was to convey three acres of land. However, the long and short of the wife's testimony is she thought the father agreed to treat her and the husband the same way he treated his other son, Neely H. Sexton, Jr. (Neely). The father and relatives also built a house for Neely. The testimony of the father and Neely was Neely had not paid the father the construction costs and had no title to the house although the house was built in 1979. The father, Neely, and the husband all testified no more than an acre and a half of land was anticipated being transferred with the house. The husband testified the agreement was he would pay separately for the land. In order to satisfy the statute of frauds requirement of a sufficient written memorandum, the contract must be so clearly described that no oral testimony is needed to supply any necessary terms and conditions. *Walker*, 188 S.C. 431, 199 S.E. 675.

---

[7] We do not understand the father to argue he should not be required to convey the house upon payment of his costs if we hold the contract is valid and enforceable.

Neither the father's answer nor the affidavit address the amount of land to be conveyed. It is only from the wife's testimony that we can find any semblance of an agreement to convey three acres of land free of charge along with the house. We, therefore, hold the answer and affidavit do not satisfy the statute of frauds as to acreage. See *Cousar v. Shepherd-Will, Inc.*, 300 S.C. 366, 387 S.E. (2d) 723 (Ct. App. 1990) (parol evidence cannot be relied upon to supplement a vague and uncertain description in a contract of sale of land). We also hold the alleged agreement as to the amount of land to be conveyed is not so clear and unequivocal that part performance, if present here, will remove the agreement from the statute of frauds. *Scurry v. Edwards*, 232 S.C. 53, 100 S.E. (2d) 812 (1957). We do hold the agreement must necessarily have contemplated the transfer of some amount of land along with the completed house. In fact, the father agrees he was to convey the amount of land the husband and wife were able to purchase.[8] However, the answer and affidavit simply do not address the amount or the consideration for the land. We, therefore, remand this issue to the trial judge for reconsideration of the amount of land to be conveyed and the sum the husband and wife are to pay the father for the land.[9] The order on remand should be more specific on the location and configuration of the land to be conveyed by the father.

Finally, the father claims the family court lacked the authority to require him to insure the marital home until it was sold and to order the husband and wife to reimburse him for the cost of insurance. We disagree. The family court may make such orders necessary to carry out and enforce its order concerning the division of property. S.C. Code Ann. Sections 20-7-420(2) and (30) (1976 and Supp. 1991).

Affirmed in part, reversed in part, and remanded in part.

GARDNER and BELL, JJ., concur.

---

[8] The law will recognize some amount of land necessarily must be conveyed to support the foundation of the house.

[9] The value may be determined by appraisal.