# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Robert Crossland, Respondent,

v.

Shirley Crossland, Petitioner.

Appellate Case No. 2012-212190

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Richland County
George M. McFaddin, Jr., Family Court Judge

---

Opinion No. 27406
Heard March 18, 2014 – Filed July 2, 2014

---

## REVERSED

---

Brian Dumas, of Columbia, for Petitioner.

Melvin D. Bannister, of Columbia, for Respondent.

---

**ACTING JUSTICE JAMES E. MOORE**: In this appeal from a divorce action, Appellant Shirley Crossland ("Wife") contends the court of appeals erred in reversing the family court's alimony award, in modifying the equitable division of the marital estate, and in remanding the issue of attorney's fees. We agree and reverse.

## I.

Respondent Robert Crossland ("Husband") and Wife were married in 1997 and separated for the final time on September 6, 2006. Husband filed for divorce on August 17, 2007. Both parties were previously married and had adult children from those marriages; however, no children were born of this marriage. At the time of the divorce hearing on March 1, 2010, Husband was seventy-six years old and Wife was sixty-two years old.

At the time of marriage, Husband was sixty-three years old and had been retired for twenty years. His income during his marriage consisted of social security retirement benefits, Air Force retirement benefits, and veterans disability benefits. At the time the parties married, Husband owned two mobile homes, the marital residence—a house Husband purchased in 1955,[1] and savings in the form of stocks, savings accounts, certificates of deposit, and mutual funds (collectively "savings accounts"). Shortly after the couple married, Husband added Wife's name to all of the savings accounts; however, after the parties separated, he transferred the money from the savings accounts to an annuity fund in his name only.[2] Directly prior to the transfer, the savings accounts contained approximately $180,000.

Before the marriage, Wife worked in a bookstore making minimum wage and lived with her daughter because she was unable to support herself financially. At the time the parties married, Wife was fifty years old and had just returned from an extended mission trip to Ukraine. She testified the bookstore held her position open during her mission trip, but upon her return, Husband asked her not to return to her job so they could travel together. Wife owned no assets at the time of the marriage and did not work during the marriage except for period of employment

---

[1] Husband paid off the loan on the house sometime during the 1960s. The house and the mobile homes remained solely in Husband's name during the marriage, and Wife never claimed the marital residence or the two mobile homes were part of the marital estate.

[2] Husband admitted withdrawing the overwhelming majority of the funds from the savings accounts, leaving each account with a nominal balance of five dollars so as to prevent Wife from receiving notification of the withdrawals. Husband also admitted moving the funds into various new accounts in his name only, in order to make it harder for Wife to trace the money.

with the Census Bureau in 1998 and 1999 during which she earned approximately $26,000. During the marriage, Wife also received $5,632.84 in proceeds resulting from an automobile accident. Wife testified she deposited both her Census Bureau earnings and the auto accident proceeds into the parties' joint accounts. Additionally, Wife testified she was eligible for social security retirement benefits, but had not applied to receive them because she did not wish to do so before reaching the official retirement age.

Both Husband and Wife suffered from various health problems, Wife to a greater degree. Husband has hearing problems and underwent two knee replacements and surgeries for heart and prostate issues. Wife has suffered from degenerative neck and back pain and has undergone two separate back surgeries. Additionally, Wife has undergone shoulder surgery and has been diagnosed with fibromyalgia and arthritis. In 2001, Wife was in an automobile accident and injured her back, shoulder, and right arm. Thereafter, Wife re-injured her shoulder and arm when she fell down a flight of stairs. In August 2005, Wife was diagnosed with breast cancer, which was successfully treated and continued to be in remission at the time of the divorce hearing. Wife testified she was unable to work because of her health problems. She also testified she stood to lose her medical insurance as a result of the divorce and would need to procure new insurance at a cost of at least $330 per month.

In his divorce complaint, Husband claimed Wife left their marital home on September 6, 2006, and did not return. Husband stated Wife had previously left the home three times, but eventually returned each time. Husband estimated they lived together for only five years of their ten-year marriage due to various separations initiated by Wife. In her Answer, Wife contended she was forced from the marital home by Husband's erratic and overly controlling behavior, especially in regards to the couple's finances.[3] Wife further requested equitable division of

---

[3] In her affidavit and at the divorce hearing, Wife and her daughter testified Husband required Wife: learn how to read the electric meter to insure usage never exceeded 400 kilowatts per month in order to limit the electric bill to $18 a month; wash clothes in cold water only and only on certain days; take "military showers" where Wife "could have the water on to get wet and rinse off only"; never drive above 55 miles per hour on the interstate and drive extremely close behind eighteen-wheelers so as to cut the wind resistance in order to conserve gasoline; limit trips to visit friends and family unless Wife had other errands to complete nearby; and limit long-distance telephone calls to ten minutes at a time. Wife

the marital property, alleging Husband had secreted assets and denied her access, and she requested separate support and maintenance, alimony based on Husband's fault, and attorney's fees and costs.

The family court granted Husband a divorce based on one year of continuous separation. The family court found it was clear the parties "entered into a traditional marriage, with the Husband to be the major, if not sole financial contributor to the financial stability of the marriage with the Wife mainly taking care of the household duties, until the point at which her health deteriorated," and both had regularly saved through "frugal living" and contributed to the marital estate. Thus, the family court awarded Wife forty percent of the marital estate, represented by the annuity[4] in Husband's name and the amount of $20,442, which the court found Husband had taken from the savings accounts to purchase an automobile after he filed for divorce, in violation of the family court's preliminary order.

Further, the family court noted it was clear from Husband's testimony he never expected Wife to contribute financially to the marriage, and although Wife "may have at some point been able to contribute to her own support, it is clear that during the marriage, her health deteriorated to the point she could no longer financially contribute to [the] marriage through gainful employment." Thus, the family court awarded Wife alimony in the amount of $958.50 per month. Finally, after considering the relevant factors, the family court awarded Wife $16,024.50 in attorney's fees.

Husband appealed, and the court of appeals reversed the family court's alimony award and remanded the issue for a recalculation of alimony, finding Wife's eligibility for social security retirement benefits should have been imputed as

---

further stated there were times when she "would have to regularly leave the house and 'visit' relatives for the last week of the month to keep the power and water usage below the levels [Husband] demanded." Husband admitted limiting the monthly electricity usage, but denied he made Wife leave the home and stay with family in order to keep the electric bill at a certain level.

[4] The family court found the annuity fund Husband had opened in his name only was marital property because the source of funds was the savings accounts, which were transmuted into marital property. The court of appeals affirmed as to this issue, and Husband did not appeal that issue to this Court.

income.  The court of appeals also modified the family court's sixty-forty division of the marital estate, finding Husband should have received seventy percent of the marital assets and that Wife was entitled only to thirty percent.  Additionally, the court of appeals reversed the family court's award of attorney's fees to Wife and remanded the issue for reconsideration because the substantive results achieved by Wife's counsel were reversed on appeal.  This Court granted Wife's petition for a writ of certiorari to review the court of appeals' decision.

## II.

In appeals from the family court, this Court reviews factual and legal issues de novo.  *Simmons v. Simmons*, 392 S.C. 412, 414–415, 709 S.E.2d 666, 667 (2011).  Thus, this Court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence; however, this broad scope of review does not require the Court to disregard the findings of the family court, which is in a superior position to make credibility determinations.  *Lewis v. Lewis*, 392 S.C. 381, 385, 709 S.E.2d 650, 651–52 (2011).

## A. Alimony

Wife argues the court of appeals erred in holding that, for the purposes of awarding alimony, income should be imputed to her based on her eligibility for social security retirement benefits she has not applied to receive.  We agree.

Alimony is a substitute for the support normally incidental to the marital relationship.  *Spence v. Spence*, 260 S.C. 526, 529, 197 S.E.2d 683, 684 (1973).  "Generally, alimony should place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage."  *Allen v. Allen*, 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct. App. 2001).

In deciding whether to award alimony, the family court must consider and give appropriate weight to the following factors:

> (1) the duration of the marriage together with the ages of the parties at the time of the marriage and at the time of the divorce . . . ; (2) the physical and emotional condition of each spouse; (3) the educational background of each spouse . . . ; (4) the employment history and earning potential of each spouse; (5) the standard of living established during the marriage; (6) the current and reasonably anticipated earnings of both spouses; (7) the current and reasonably anticipated

expenses and needs of both spouses; (8) the marital and nonmarital properties of the parties . . . ; (9) custody of the children . . . ; (10) marital misconduct or fault of either or both parties . . . ; (11) the tax consequences to each party as a result of the particular form of support awarded; (12) the existence and extent of any support obligation from a prior marriage or for any other reason of either party; and (13) such other factors the court considers relevant.

S.C. Code Ann. § 20-3-130(C) (2014). An award of alimony rests within the sound discretion of the family court and will not be disturbed absent an abuse of discretion. *Dickert v. Dickert*, 387 S.C. 1, 8, 691 S.E.2d 448, 451 (2010). "[T]he inartful use of an abuse of discretion deferential standard of review merely represents the appellate courts' effort to incorporate the two sound principles underlying the proper review of an equity case." *Lewis*, 392 S.C. at 391, 709 S.E.2d at 655. "[T]hose two principles are the superior position of the trial judge to determine credibility and the imposition of a burden on an appellant to satisfy the appellate court that the preponderance of the evidence is against the finding of the trial court." *Id*.

At the hearing, Wife testified that she was sixty-two years old and, thus, eligible to receive social security retirement benefits but that she had not applied to receive those benefits because she had "always heard that if you start drawing it earlier, you won't receive as much as if you wait until later." Wife said that she was not sure, but she thought she would receive "a little over $200" per month if she applied to receive social security benefits at age sixty-two instead of postponing her application until she reached age sixty-five.

The court of appeals held the family court erred in calculating alimony without considering Wife's eligibility for social security benefits and remanded for a determination of Wife's "income," to be derived from her future, yet-unclaimed social security benefits and a recalculation of alimony in light of such benefits. Essentially, the court of appeals equated Wife's decision to postpone applying for social security benefits with voluntary underemployment such that Wife's *eligibility* to receive benefits should be imputed as income. This was error.

Initially, it is well-established that social security benefits a party is *actually receiving* would be properly considered as income in awarding alimony. *See, e.g.*, *Kennedy v. Kennedy*, 389 S.C. 494, 501, 699 S.E.2d 184, 187 (Ct. App. 2010) (identifying the husband's income as being comprised of, inter alia, social security

benefit payments). However, the question here is a different one: whether social security benefits should be imputed as income where a person is eligible to receive benefits but has not yet applied for or received them.

Wife seems to ask this Court to create a rule that income should *never* be imputed on the basis of eligibility for government benefits; however, a bright-line rule is not only unnecessary in light of existing case law, but also inadvisable. *See Rimer v. Rimer*, 361 S.C. 521, 527, 605 S.E.2d 572, 575 (Ct. App. 2004) ("We leave it largely to the family court judge's discretion, however, to determine what is [an] appropriate [alimony award] in light of the circumstances of each individual case. Formulaic principles and bright-line rules will only hinder the ability of family court judges to reach an equitable result in this individualized, fact-intensive area of law."). Indeed, the family court may, but is not in all cases required to, consider eligibility for government benefits, and under the circumstances of this case, the family court did not commit reversible error.

Thus, the court of appeals erred in finding the family court was required to impute income to Wife based on social security benefits she is eligible to receive at age sixty-two. Although voluntary decreases in income may prompt a family court to consider a party's earning capacity instead of actual income, it is clear that "the failure to reach earning capacity, by itself, does not automatically equate to voluntary underemployment such that income must be imputed." *Kelley v. Kelley*, 324 S.C. 481, 488–89, 477 S.E.2d 727, 731 (Ct. App. 1996). "[C]ourts are reluctant to invade a party's freedom to pursue the employment path of their own choosing or impose unreasonable demands upon parties." *Id*. at 489, 477 S.E.2d at 731. "[T]he common thread in cases where actual income versus earning capacity is at issue is that courts are to closely examine the [party's] good-faith and reasonable explanation for the decreased income." *Id*. Here, there is no evidence of any bad faith on Wife's part, and Wife articulated a rational reason for delaying her application for social security benefits—namely, that she will receive a greater benefit if she postpones her application until she reaches age sixty-five. Accordingly, the family court did not err in declining to impute wife's eligibility for social security benefits at age sixty-two.

Husband argues the family court should have been required to consider Wife's eligibility for social security benefits based on the language of section 20-3-130(C)(6). However, the language of that section requires the family court to consider "the current and *reasonably anticipated earnings* of both spouses." Thus, were the family court to prospectively account for Wife's future, reasonably

anticipated receipt of social security benefits in its initial alimony award, the correct amount for the family court to consider would be the amount Wife *actually anticipates receiving* when she reaches age sixty-five—not the lesser amount Wife is eligible to receive at age sixty-two. The record is devoid of any evidence of the amount of benefits Wife might expect to receive at age sixty-five. Because the family court must have sufficient evidence upon which to base a determination of a person's earning potential for purposes of awarding alimony, the family court was not presented with sufficient evidence to prospectively consider the amount of benefits Wife reasonably anticipates receiving at age sixty-five in awarding alimony and, thus, did not err in refusing to engage in such speculation.[5] *See Sexton v. Sexton*, 308 S.C. 37, 42, 416 S.E.2d 649, 653 (Ct. App. 1992) (reversing the family court's alimony award because it was based on an unsupported finding of the husband's earning capacity), *rev'd on other grounds*, 310 S.C. 501, 427 S.E.2d 665 (1993); *see also Nelson v. Nelson*, 651 So.2d 1252 (Fla. Dist. Ct. App. 1995) ("As a general rule, trial courts may not consider future or anticipated events in setting current alimony and child support amounts due to the lack of evidentiary basis or the uncertainty surrounding such future events."); *cf. Cox v. Cox*, 882 P.2d 909 (Alaska 1994) (affirming the trial court's refusal to consider future social security benefits due to their "speculative nature"). In sum, family courts may, in some cases, but are not required in every instance, to impute income based on a party's eligibility to receive social security benefits as a matter of law.

---

[5] We note Husband is not foreclosed from seeking to modify alimony when Wife actually begins receiving social security benefits after her sixty-fifth birthday. *See* S.C. Code § 20-3-170 (2014) (allowing for a modification of alimony based on a substantial change in circumstances of the parties); *Serowski v. Serowski*, 381 S.C. 306, 313–15, 672 S.E.2d 589, 593–94 (Ct. App. 2009) (affirming reduction in the husband's alimony obligation based on the wife's increase in monthly income due, in part, to her receipt of social security benefits). Although "[c]hanges in circumstances within the contemplation of the parties at the time the divorce was entered generally do not provide a basis for modifying alimony," where the date and amount of the anticipated changes are not ascertainable and the original decree does not prospectively account for the future circumstance, a modification may be appropriate. *Id.* at 313, 672 S.E.2d at 593; *see Eubank v. Eubank*, 347 S.C. 367, 374, 555 S.E.2d 413, 417 (Ct. App. 2001) (finding that although the likelihood that the wife would receive an inheritance was known to the parties prior to the divorce, her actual inheritances could serve as changed circumstances warranting a review of alimony because the parties could not have ascertained the amount of the wife's inheritances or when she would receive them at the time of the divorce).

Based on the facts of this case, we find the court of appeals erred in vacating the family court's alimony award based on its failure to consider Wife's eligibility to receive social security benefits at age sixty-two. Further, because there is insufficient evidence as to the amount of social security benefits Wife reasonably anticipates receiving after age sixty-five, the family court did not err in refusing to consider Wife's future, reasonably anticipated receipt of social security benefits in its initial alimony award. Accordingly, we reverse as to this issue and reinstate the family court's alimony award.

## B. Equitable Division

Wife next argues the court of appeals erred in modifying the family court's decision to award her forty percent of the marital estate. We agree.

The division of marital property is within the discretion of the family court and will not be disturbed on appeal absent an abuse of discretion. *Craig v. Craig*, 365 S.C. 285, 617 S.E.2d 359 (2005). As previously noted, "the inartful use of an abuse of discretion deferential standard of review" in this context represents two underlying principles of appellate review: "the superior position of the trial judge to determine credibility and the imposition of a burden on an appellant to satisfy the appellate court that the preponderance of the evidence is against the finding of the trial court." *Lewis*, 392 S.C. at 391, 709 S.E.2d at 655. In reviewing a division of marital property, an appellate court looks to the overall fairness of the apportionment. *Deidun v. Deidun*, 362 S.C. 47, 606 S.E.2d 489 (Ct. App. 2004). If the end result is equitable, the fact the appellate court would have arrived at a different apportionment is irrelevant. *Id.*

Equitable distribution of marital property "is based on the recognition that marriage is, among other things, an economic partnership." *Morris v. Morris*, 335 S.C. 525, 517 S.E.2d 720 (Ct. App. 1999). "Upon dissolution of the marriage, marital property should be divided and distributed in a manner which fairly reflects each spouse's contribution to its acquisition, regardless of who holds legal title." Section 20-3-620 of the South Carolina Code provides factors for the family court to consider in apportioning marital property and instructs the family court to "give weight in such proportion as it finds appropriate" to each of the following factors:

(1) the duration of the marriage together with the ages of the parties at the time of the marriage and at the time of the divorce . . . ; (2) marital misconduct or fault of either or both parties . . . ;  (3) the value of the marital property . . . ; (4) the income of each spouse, the earning potential of each spouse, and the opportunity for future acquisition of capital assets; (5) the health, both physical and emotional, of each spouse; (6) the need of each spouse or either spouse for additional training or education in order to achieve that spouse's income potential; (7) the nonmarital property of each spouse; (8) the existence or nonexistence of vested retirement benefits for each or either spouse; (9) whether separate maintenance or alimony has been awarded; (10) the desirability of awarding the family home . . . ; (11) the tax consequences to each or either party . . . ; (12) the existence and extent of any support obligations, from a prior marriage . . . ; (13) liens and any other encumbrances upon the marital property . . . ; (14) child custody arrangements and obligations . . . ; and (15) such other relevant factors as the trial court shall expressly enumerate in its order.

S.C. Code Ann. § 20-3-620 (2014).

This Court has held "[w]hile there is certainly no recognized presumption in favor of a fifty-fifty division, we approve equal division as an appropriate starting point for a family court judge attempting to divide an estate of a long-term marriage." *Doe v. Doe*, 370 S.C. 206, 634 S.E.2d 51 (2006).  The purpose of the general fifty-fifty division is to protect the non-working spouse who undertook the household duties, and to prevent an award "solely based on the parties' direct financial contributions."  *Avery v. Avery*, 370 S.C. 304, 634 S.E.2d 668 (Ct. App. 2006).

As to equitable division, the family court examined the factors contained in section 20-3-620, in addition to considering: (1) Husband's knowledge, prior to the marriage, that he would be providing Wife's sole financial support; (2) Husband's concession that Wife's actions assisted in adding to the parties' saving; (3) Husband claiming no fault against Wife as to the breakup of the marriage; (4)  Husband's concession that he took steps to hide the marital assets; (5) Husband's failure to present any evidence to the family court regarding the value of any of the savings accounts prior to the marriage; (6) Wife's declining health throughout the marriage, which the family court determined had deteriorated  to the point she could no

longer financially support herself through gainful employment; and (7) Wife's contribution to the savings accounts in the form of her Census Bureau salary and automobile accident proceeds.  The family court determined that by Wife complying with the "very harshly frugal rules set by the Husband," the parties contributed equally to the joint marital estate and stated "[i]t is clear to this Court that the fault of the ultimate dissolution of this marriage rests with the Husband."  Based on these considerations, the family court apportioned sixty percent of the marital estate to Husband and forty percent to Wife.

On appeal, the court of appeals found the family court erred in awarding Wife forty percent of the marital estate, and modified the lower court's order and award to thirty percent.  The court of appeals noted the legal principle that equitable division should not be based solely on the parties' direct financial contributions; nevertheless, the court found the record demonstrated Husband made disproportionately greater contributions to the marriage than Wife, and "Wife brought no assets to the marriage and brought in no assets during the marriage."  Further, the court of appeals held Wife contributed only a negligible amount during the marriage to the parties' joint accounts through her position with the Census Bureau and the proceeds from her automobile accident, and the "vast majority of the contributions to the parties' accounts during the marriage were made from Husband's social security, retirement, and disability benefits."  In addition, the court noted the bulk of the funds in the savings accounts were earned by Husband prior to the marriage and as a result of "decades of living frugally and saving his earnings."  Finally, the court of appeals noted both parties were unemployed for the majority of the marriage and contributed to household duties.

We find the court of appeals erred in modifying the family court's division of assets, as its decision impermissibly relied *solely* on the parties' direct financial contributions to the marital estate to the exclusion of other relevant statutory factors.  Although greater direct financial contributions may properly be considered in apportioning a marital estate, that factor is but one of many factors to be considered and does not alone overshadow all of the other relevant factors examined by the family court.[6]  *See Pittman v. Pittman*, 407 S.C. 441, 754 S.E.2d

_____

[6] Specifically, the family court found that Husband actively concealed assets and knew at the outset of the marriage that Wife would not contribute financially to the marriage, and that before Wife's health deteriorated to the point that she was unable to work, she contributed all of her earnings to the parties joint accounts— over $30,000 during the course of the marriage.  Unlike the court of appeals, we do

501, 507 (2014) (noting the proper way to reflect one party's disproportionately greater direct financial contribution is in the overall division of the marital estate); *see, e.g*., *Myers v. Myers*, 391 S.C. 308, 705 S.E.2d 86 (Ct. App. 2011) (affirming a division of marital assets apportioning fifty-two percent to husband and forty-eight percent to wife where the parties were married for nine years and both were in their sixties at the time of divorce, divorce was granted on the basis of one year's continuous separation, wife earned an income but did not contribute it towards the family expenses, instead using it exclusively for her own benefit, and the parties lived in a home owned by husband for the duration of the marriage); *Doe v. Doe*, 370 S.C. 206, 634 S.E.2d 51 (Ct. App. 2006) (finding a seventy-thirty apportionment in favor of the husband was reversible error even where the wife did not make direct financial contributions during the last eighteen years of the marriage, she admitted a twenty-year-long affair with a former boss, and wife's paramour, not the husband, was the biological father of the parties' only child).

Although this Court is free to make its own findings of fact and conclusions of law, we are not required to disregard the family court's factual findings, which in this case favor Wife—not Husband. We find the family court's apportionment fairly reflects the relative contributions of the parties, as well as the other relevant statutory factors, and therefore, we reverse the decision of the court of appeals and reinstate the family court's equitable division of the marital estate, apportioning forty percent to Wife and sixty percent to Husband.

## C. Attorney's Fees

Lastly, Wife argues the court of appeals erred in remanding the issue of attorney's fees to the family court. We agree.

The family court may order one party to pay a reasonable amount to the other party for attorney's fees and costs incurred in maintaining an action for divorce. S.C. Code Ann. § 20-3-130(H) (2014). In determining whether an attorney's fee should be awarded, the following factors should be considered: (1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; and (4) effect of the attorney's fee on

---

not view this as a "negligible" amount, particularly in light of the parties' agreement that Husband would be the primary financial provider. The family court also concluded that the parties contributed equally to the joint marital estate and found "the fault of the ultimate dissolution of this marriage rests with the Husband and that the Wife only left due to the Husband's requests."

each party's standard of living. *E.D.M. v. T.A.M.*, 307 S.C. 471, 415 S.E.2d 812 (1992). In determining the amount of reasonable attorney's fees, a court should take six factors into consideration: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services." *Glasscock v. Glasscock*, 304 S.C. 158, 403 S.E.2d 313 (1991).

As previously noted, the family court awarded Wife $16,024.50 in attorney's fees after determining: (1) Wife had no ability to pay her attorney's fees; (2) Wife's counsel achieved beneficial results, "particularly in tracing the marital assets despite Husband's attempts to conceal the same"; (3) Husband was in a far better position to pay Wife's attorney's fees, costs and expenses, and the award would not impact Husband as severely as it would Wife; and (4) the matter was unnecessarily made more difficult by Husband's actions in attempting to conceal the joint nature and extent of the parties' marital assets, thereby requiring additional time and effort on the part of Wife's counsel to locate, identify, and value the assets.

Where beneficial results in a divorce action are reversed on appeal, the case should be remanded for reconsideration of attorney's fees awarded. *See Rogers v. Rogers*, 343 S.C. 329, 540 S.E.2d 840 (2001) ("[S]ince the beneficial result obtained by counsel is a factor in awarding attorney's fees, when that result is reversed on appeal, the attorney's fee award must also be reconsidered.").

On appeal, the court of appeals reversed and remanded the issue of attorney's fees for redetermination because it reversed and modified in part the family court's original order. Because we reverse the decision of the court of appeals and reinstate the family court's alimony award and division of the marital estate, we reverse also as to this issue and reinstate the family court's award of attorney's fees.

### III.

For the foregoing reasons, we reverse the decision of the court of appeals regarding alimony, equitable division, and attorney's fees and reinstate the family court's order as to those issues.

**REVERSED**.

**TOAL, C.J., PLEICONES, BEATTY and HEARN, JJ., concur.**