**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Heidi Noel Kendig, Respondent,

v.

Arthur C. Kendig, M.D., Appellant.

Appellate Case No. 2015-002457

———————

Appeal From Richland County
Dorothy Mobley Jones, Family Court Judge

———————

Unpublished Opinion No. 2018-UP-213
Heard April 9, 2018 – Filed May 16, 2018

———————

**AFFIRMED AS MODIFIED**

———————

Katherine Carruth Goode, of Winnsboro, for Appellant.

Charles D. Lee, III, of McLaren & Lee, of Columbia, for Respondent.

———————

**PER CURIAM:** Arthur Kendig (Husband) appeals the family court's final order, arguing the family court erred in (1) denying Husband's motion for mistrial and making findings based on the family court's belief that Husband was disrespectful; (2) failing to make a ruling on the issue of transportation of the parties' children; (3) inequitably dividing the marital estate; (4) awarding Heidi Noel Kendig (Wife) alimony of $7,000 per month and moving, personal, and vehicle expenses; (5)

ordering child support of $3,690 per month and requiring Husband to maintain life insurance as security for child support until the children reach the age of twenty-four; and (6) awarding Wife attorney's fees. We affirm as modified.

## FACTS

Husband and Wife married in Columbus, Ohio on October 26, 2003. Wife had a degree in Music-Vocal Performance, worked in jewelry sales, and sang part-time with the Toledo Opera. Husband graduated from medical school in June 2003 and began a three year internal medicine residency program at the Cleveland Clinic in Cleveland, Ohio. After the parties were married, Wife moved to Cleveland. The parties moved to Iowa City, Iowa during the summer of 2007 where Husband completed a three year fellowship program in Cardiology followed by a one year Electrophysiology fellowship at the University of Iowa. During the early years of the parties' marriage, Wife worked in jewelry sales; however, after the birth of the parties' first child in 2008, Wife did not remain employed outside the home. The parties' second child was born in 2010. Husband was then hired by South Carolina Heart Center to work as an Electrophysiologist beginning July 2011.

Upon moving to South Carolina, the parties purchased a home in Elgin. On June 17, 2012, Wife discovered emails exchanged between Husband and his paramour from March to May of 2012 which included a video of her wearing a bikini and several references to emotional and physical intimacy. On October 6, 2012, Husband moved out of the marital home. Thereafter, Wife hired an investigation service and obtained evidence that Husband spent many nights with his paramour between October 12 and 28, 2012.

Wife commenced this action by summons and complaint filed on December 4, 2012. During the pendency of the action, the family court awarded Wife temporary custody, temporary exclusive use of the marital home and automobile, and temporary unallocated support and other expenses, including mortgage and health insurance for Wife and the children. After Wife filed a motion for supplemental temporary relief, the family court increased the temporary unallocated support awarded to Wife based on Husband's misrepresentation of his income at a previous hearing. On April 8, 2014, the family court filed an order granting the divorce and approving the parties' agreement as to equitable division of personal property and automobiles, the children's health insurance, and custody and visitation schedule. The family court reserved jurisdiction to hear and determine the remaining outstanding issues.

At trial, Wife explained she could not resume a career in opera because of the unpredictable schedule and her lack of vocal training since the marriage. Wife believed she could not go back to full-time jewelry sales because the inflexible hours would prevent her from taking care of the children after school. Wife testified she was capable of earning a salary of approximately $20,000; however, those earnings would be negated by any daycare or after-school care expenses. She believed it was important she receive training or education in order to obtain a higher paying job. Wife testified Husband failed to pay the mortgage as ordered by the family court, resulting in foreclosure on the house.

After Wife's testimony, Husband's counsel informed the family court that Husband would be his only witness; however, Husband was absent the morning he was scheduled to testify. Husband's counsel attempted to enter Husband's deposition into evidence in lieu of his in-court testimony, arguing Rule 32(a), SCRCP, allowed a party's deposition to be used for any purpose, even in his voluntary absence. The family court denied the request, stated it was willing to wait for Husband, and expressed its concern that Husband would not be heard on the issues. The family court expressed its irritation and admitted to raising its voice after Husband's counsel continued to argue the deposition should be entered into evidence in lieu of Husband's in-court testimony.

Husband's counsel moved for a mistrial based on the family court's irritation regarding his position as to Rule 32(a). Husband's counsel argued the family court could not decide the case because it believed Husband and his counsel had been disrespectful. The family court explained its irritation by stating it was surprised to find out so late that Husband would not be testifying because the parties requested a three day trial, the case was pending for two and a half years, and Husband was scheduled to testify. After repeating its ruling that it would not allow Husband's deposition into evidence in lieu of his testimony, the family court denied Husband's motion for mistrial.

During in-court testimony, Husband testified that when the parties moved to Columbia they each had significant credit card debt and they were living "paycheck to paycheck"; however, they purchased a home that was approximately 5,000 square feet and six bedrooms. He explained that after two years at South Carolina Heart Center, he decided to leave because of the financial condition of the practice and hospital. Husband explained he ultimately took a position in Savannah, Georgia, where his base salary was $400,000, because he was subject to a non-compete clause pursuant to his employment with South Carolina Heart Center.

In its final order, the family court made extensive findings of fact. It found all assets not dealt with in the parties' agreement were marital and ordered the assets to be divided on a 50/50 basis. As to the marital debts, the family court ordered Wife was solely responsible for two of the four credit card debts, totaling $11,971.90, and Husband was responsible for the remaining two credit card debts, totaling $18,128.29. The family court awarded Wife $7,000 per month in alimony, a maximum of $25,000 in moving expenses, and $5,000 in personal expenses. It ordered Husband pay $3,690 each month in child support in addition to insurance coverage and medical expenses. The family court ordered Husband maintain life insurance in the amount of $1,000,000 as security for child support until the children reach the age of twenty-four. The family court ordered Husband pay $83,000 to Wife for attorney's fees, costs, and expenses. This appeal followed.

## STANDARD OF REVIEW

"In appeals from the family court, this [c]ourt reviews factual and legal issues de novo." *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). "[W]hile this court has the authority to find facts in accordance with its own view of the preponderance of the evidence, 'we recognize the superior position of the family court . . . in making credibility determinations.'" *Lewis v. Lewis*, 400 S.C. 354, 361, 734 S.E.2d 322, 325 (Ct. App. 2012) (quoting *Lewis v. Lewis*, 392 S.C. 381, 392, 709 S.E.2d 650, 655 (2011)). "Further, de novo review does not relieve an appellant of his burden to 'demonstrate error in the family court's findings of fact.'" *Id.* (quoting *Lewis*, 392 S.C. at 392, 709 S.E.2d at 655). "Consequently, the family court's factual findings will be affirmed unless [the] appellant satisfies this court that the preponderance of the evidence is against the finding of the [family] court." *Id.* (quoting *Lewis*, 392 S.C. at 392, 709 S.E.2d at 655) (alteration in original).

## LAW/ANALYSIS

### I.    MOTION FOR MISTRIAL

Husband argues the family court erred in denying his motion for a mistrial because the family court was biased against Husband. He argues all of the family court's findings of fact and conclusions of law were tainted by the family court's bias and prejudice against Husband. We disagree.

"[The] family court . . . should . . . grant a new trial if judicial misconduct affected the proceedings below." *Blejski v. Blejski*, 325 S.C. 491, 498, 480 S.E.2d 462, 466 (Ct. App. 1997).

The family court did not err by denying Husband's motion for a mistrial because the evidence shows the family court was not biased against Husband. The family court's irritation was justified because counsel misrepresented Husband's intention to testify and counsel continued to argue he was entitled to introduce the deposition in lieu of Husband's testimony after the family court stated its ruling several times. After Husband's counsel moved for a mistrial, the family court stated it would rule fairly and would never make a case punitive. Further, the family court expressed concern that Husband's issues would not be heard and attempted to make any necessary accommodations in order to hear Husband's testimony. Husband did not prove he was prejudiced by the family court's irritation because all of the family court's rulings were supported by the evidence in the record. We find no error.

## II. TRANSPORTATION

Husband argues the family court erred in failing to address the issue of transportation of the parties' children for Husband's visitation. We disagree.

In its final order, the family court expressly denied Husband's request that Wife be required to help pay for transportation. The ruling is supported by evidence in the record that Husband voluntarily moved to Georgia, he continuously failed to exercise visitation rights, and Wife was not in a stable position to commit to a particular transportation schedule but was willing to negotiate. We find no error. *Lewis*, 400 S.C. at 361, 734 S.E.2d at 325 ("[T]he family court's factual findings will be affirmed unless [the] appellant satisfies this court that the preponderance of the evidence is against the finding of the [family] court." (quoting *Lewis*, 392 S.C. at 392, 709 S.E.2d at 655)).

## III. EQUITABLE DISTRIBUTION

Husband argues the family court erred in its equitable distribution of the marital estate. Husband does not argue the family court erred by holding the assets in dispute were marital. However, he argues the family court erred by: (1) failing to make specific findings with respect to the statutory factors; (2) including Husband's net bonus in the marital estate when the bonus was spent to pay marital debt; and (3) failing to give him a credit for $10,000 he paid as an advancement toward Wife's attorney's fees.

"The doctrine of equitable distribution is based on a recognition that marriage is, among other things, an economic partnership." *Johnson v. Johnson*, 296 S.C. 289, 293, 372 S.E.2d 107, 109 (Ct. App. 1988). "On appeal, we must review the fairness of the overall apportionment, and if equitable, we will uphold it regardless

of whether we would have weighed specific factors differently." *Wilburn v. Wilburn*, 403 S.C. 372, 390, 743 S.E.2d 734, 744 (2013).

> Moreover, consistent with our constitutional authority for *de novo* review, an appellant is not relieved of his burden to demonstrate error in the family court's findings of fact. Consequently, the family court's factual findings will be affirmed unless [the] 'appellant satisfies this court that the preponderance of the evidence is against the finding of the [family] court.'

*Lewis*, 392 S.C. at 392, 709 S.E.2d at 655 (quoting *Finley v. Cartwright*, 55 S.C. 198, 202, 33 S.E.2d 359, 360-61 (1899)).

In making an equitable apportionment of the marital estate, the family court must weigh the following fifteen factors "in such proportion as it finds appropriate":

> (1) the duration of the marriage together with the ages of the parties at the time of the marriage and at the time of the divorce . . . ; (2) marital misconduct or fault of either or both parties . . . ; (3) the value of the marital property . . . . The contribution of each spouse to the acquisition, preservation, depreciation, or appreciation in value of the marital property, including the contribution of the spouse as homemaker . . . ; (4) the income of each spouse, the earning potential of each spouse . . . ; (5) the health . . . of each spouse; (6) the need . . . for additional training or education . . . ; (7) the nonmarital property of each spouse; (8) the . . . vested retirement benefits for each or either spouse; (9) whether separate maintenance or alimony has been awarded; (10) the desirability of awarding the family home as part of equitable distribution or the right to live therein for reasonable periods to the spouse having custody of any children; (11) the tax consequences . . . ; (12) the existence and extent of any support obligations, from a prior marriage or for any other reason or reasons, of either party; (13) liens and any other encumbrances upon the marital property, . . . and any other existing debts incurred . . . during the course of the marriage; (14) child custody . . . ;

and (15) such other relevant factors as the [family] court shall expressly enumerate in its order.

S.C. Code Ann. § 20-3-620(B) (2014).

First, the family court's overall apportionment of the parties' marital assets and debts is equitable, and it weighed the statutory factors accordingly. It determined that while Husband made significantly greater financial contributions, Wife made significantly greater contributions to the marriage and children. The family court also determined that because Husband unilaterally avoided payment of the parties' mortgage, resulting in mortgage indebtedness of $60,000 and foreclosure, Husband should be responsible for all marital debts and liabilities. The family court put significant emphasis on Husband's high earning capacity, finding Husband was capable of paying debts while still maintaining a high standard of living and Wife had little capacity to earn significant income while having custody of the children. Accordingly, the family court properly considered and gave appropriate weight to the statutory factors, and the overall apportionment is equitable.

Second, while Husband argues his bonus should not have been included in the equitable division of the marital assets, he did not present any evidence to prove the bonus was spent on marital debt. The parties stipulated to the description and dollar amount of the bonus for the family court to determine whether it was marital property; however, Husband never indicated the money was no longer available. Therefore, the court did not err by ruling the bonus was marital property subject to division.

Finally, the family court ruled Husband was not entitled to a credit for any debts previously paid because he avoided payment of the mortgage, as ordered by the court, resulting in foreclosure on the marital home. Further, the family court ruled the $10,000 was an advancement against equitable apportionment. The family court found Husband was capable of paying all marital debts and liabilities because of his elevated income. We find the family court did not err in excluding the $10,000 Husband paid for Wife's attorney's fees during the pendency of the litigation from its equitable distribution.

## IV.   ALIMONY

Husband argues the family court erred by awarding Wife $7,000 per month in permanent periodic alimony because the family court's findings regarding the statutory factors were erroneous and the award was punitive. Husband argues the family court erred by ordering Husband pay all expenses for Wife's leased vehicle,

a maximum of $25,000 for moving expenses, and $5,000 for additional personal expenses because the awards were not supported by any evidence on the record and were punitive. We disagree.

"Alimony is a substitute for the support normally incidental to the marital relationship." *Crossland v. Crossland*, 408 S.C. 443, 451, 759 S.E.2d 419, 423 (2014). "Generally, alimony should place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage." *Id.* (quoting *Allen v. Allen*, 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct. App. 2001)).

Section 20-3-130(C) of the South Carolina Code (2014) provides the family court "must consider and give weight in such proportion as it finds appropriate" to the following factors when making an award of alimony:

> (1) the duration of the marriage together with the ages of the parties at the time of the marriage and at the time of the divorce . . . ; (2) the physical and emotional condition of each spouse; (3) the educational background of each spouse, together with need of each spouse for additional training or education in order to achieve that spouse's income potential; (4) the employment history and earning potential of each spouse; (5) the standard of living established during the marriage; (6) the current and reasonably anticipated earnings of both spouses; (7) the current and reasonably anticipated expenses and needs of both spouses; (8) the marital and nonmarital properties of the parties . . . ; (9) custody of the children, particularly where conditions or circumstances render it appropriate that the custodian not be required to seek employment outside the home, or where the employment must be of a limited nature; (10) marital misconduct or fault of either or both parties, whether or not used as a basis for a divorce or separate maintenance decree if the misconduct affects or has affected the economic circumstances of the parties, or contributed to the breakup of the marriage . . . ; (11) the tax consequences to each party as a result of the particular form of support awarded; (12) the existence and extent of any support obligation from a prior marriage or for any other reason of either party; and (13) such other factors the court considers relevant.

"Three important factors in awarding periodic alimony are (1) the duration of the marriage; (2) the overall financial situation of the parties, especially the ability of the supporting spouse to pay; and (3) whether either spouse was more at fault than the other." *Patel v. Patel*, 359 S.C. 515, 529, 599 S.E.2d 114, 121 (2004).

First, the family court's award of $7,000 per month in periodic alimony is supported by evidence in the record, and there is no evidence in the record to prove the award is punitive. Husband's income was $400,000 plus an unspecified year-end bonus. Wife's earning potential was found to be between $15,000 and $20,000; however, the court determined the benefit of this income would be off-set by the costs of daycare and after-school care. Moreover, $7,000 is less than one quarter of Husband's monthly income of $33,000, disregarding the potential for a year-end bonus. The family court put great emphasis on the elevated standard of living the parties experienced during the marriage and Wife's emotional and financial support of Husband while he advanced his career. The family court also emphasized Husband's lack of contact with the children and his adultery, which directly and irreparably affected the economic circumstances of Wife and her ability to provide for the children. Considering the high standard of living the parties experienced at the time of the demise of the marriage and the vast disparity between Husband's income and Wife's potential earning capacity, the award of $7,000 in periodic alimony is supported by the evidence in the record and is not punitive. We find no error.

Second, the family court's order that Husband pay all costs for Wife's leased vehicle and expenses associated with Wife and the children's relocation from the former marital residence up to a maximum of $25,000 and $5,000 for personal needs and expenses associated with traveling, upon Wife's request, is supported by the evidence in the record. Husband's failure to pay the mortgage on the former marital home, as ordered by the family court, and the resulting foreclosure is the sole reason Wife is required to relocate herself and the children. Further, Wife has no income or savings to maintain her vehicle to provide safe transportation for the children or to pay a down payment or security deposit to secure a home. Wife testified if she pursued a job which required working nights and weekends, it would be necessary to move in with her mother in California to accommodate child care. Therefore, the court's order requiring Husband to pay moving and vehicle expenses is reasonable. We find no error.

## V.    CHILD SUPPORT AND LIFE INSURANCE

Husband argues the family court erred by ordering Husband pay $3,690 per month in child support for the parties' two children in addition to insurance and medical

expenses because the award was the product of bias and prejudice against Husband.  We disagree.

Further, Husband argues the family court erred by ordering he maintain life insurance as security for child support until the children reach the age of twenty-four.  We agree.

The Child Support Guidelines "provide for calculated amounts of child support for a combined parental gross income of up to $30,000 per month, or $360,000 per year.  Where the combined gross income is higher, courts should determine child support awards on a case-by-case basis."  S.C. Code Ann. Regs. 114-4710(A)(3) (Supp. 2017).

"The family court may order the payor spouse to obtain life insurance as security for an alimony or child support obligation if the supported spouse can demonstrate the existence of special circumstances with reference to her need for the security and the payor spouse's ability to provide it."  *Smith v. Smith*, 386 S.C. 251, 264, 687 S.E.2d 720, 727 (Ct. App. 2009).

> [O]rders for child support run until the child turns eighteen years of age or until the child is married or becomes self-supporting, as determined by the court, whichever occurs first, or past the age of eighteen years if the child is enrolled and still attending high school, not to exceed high school graduation or the end of the school year after the child reaches nineteen years of age, whichever is later; or in accordance with a preexisting agreement or order to provide for child support past the age of eighteen years; or in the discretion of the court, to provide for child support past age eighteen when there are physical or mental disabilities of the child or other exceptional circumstances that warrant the continuation of child support beyond age eighteen for as long as the physical or mental disabilities or exceptional circumstances continue.

S.C. Code Ann. § 63-3-530(A)(17) (2010 & Supp. 2017).

We find the family court did not err by awarding $3,690 per month in child support.  The child support guidelines provide for specified child support amounts based on a combined gross income of up to $360,000 per year.  However,

Husband's base income is $400,000 in addition to an undetermined year-end bonus. Therefore, pursuant to regulation 114-4710(A)(3), the family court determined child support "on a case-by-case basis." Based on the evidence in the record regarding Husband's high income and Wife's low earning potential, the award of $3,690 for the parties' two children is reasonable. No evidence in the record supports Husband's argument that this award is punitive. We find no error.

However, we find the family court erred by ordering Husband maintain life insurance as security for child support until the children reach the age of twenty-four because Husband's child support obligation terminates once the children reach the age of eighteen, or nineteen pursuant to section 63-3-530(A)(17). There is no evidence in the record to show that child support should continue to the age of twenty-four. Further, the court made no findings that exceptional circumstances exist to warrant continuation of child support. The purpose of ordering the payor spouse maintain life insurance as security for an award of support is to ensure payment past the payor spouse's death. *See Gilfillin v. Gilfillin*, 344 S.C. 407, 414, 544 S.E.2d 829, 832 (2001) (finding the only method to secure payment of support beyond the life of the payor spouse is life insurance). However, child support which does not extend past the age of eighteen or nineteen does not require a method to secure payment once the children reach the age of majority. We find the family court erred and the order of the family court is modified to require Husband maintain life insurance until the children reach the age of eighteen, or nineteen pursuant to section 63-3-530(A)(17).

## VI. ATTORNEY'S FEES

Husband argues the court erred by awarding Wife attorney's fees in the amount of $83,000 because the award was punitive and based on the family court's bias and prejudice against Husband. We disagree.

Pursuant to section 20-3-130(H) of the South Carolina Code (2014), the family court has the authority to award attorney's fees in divorce actions. "In determining whether . . . attorney's fee[s] should be awarded, the following factors should be considered: (1) the party's ability to pay his[ or ]her own attorney's fee[s]; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; (4) [the] effect of the attorney's fee[s] on each party's standard of living." *E.D.M. v. T.A.M.*, 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992). If the court determines attorney's fees and costs are appropriate, it should consider the following factors when determining the amount to award: "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial

results obtained; [and] (6) customary legal fees for similar services." *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

The family court did not err by ordering Husband pay $83,000 in Wife's attorney's fees, and there is no evidence to show the award was punitive in nature. The family court properly considered the appropriate factors in deciding to award attorney's fees. It found Wife was not able to pay her attorney's fees while Husband was in a "superior financial position" and was capable of paying the attorney's fees. Wife obtained a beneficial result in that the assets in dispute were deemed "marital" subject to equitable distribution and she was awarded alimony. While Husband has very stable and superior financial conditions, Wife lives in a foreclosed home without the ability to pay for housing, has no income, and maintains a home for the parties' two children. As to the effect of the attorney's fees on each party's standard of living, while Husband is capable of paying the attorney's fees because of his high income, it would be extremely difficult for Wife to pay the attorney's fees due to her lack of income and her need to provide for the parties' children. Further, the family court properly considered all factors in determining the amount of fees and costs to award. The family court found the case was extremely difficult as a result of the lengthy period of time the case was pending, the attempts to settle financial issues, and the discovery issues regarding Husband's misrepresentations of his income and adultery. The family court found Wife was not able to afford even a portion of the attorney's fees because she has been required to rely on her award of alimony and child support to provide for herself and the children. Further, the family court found the equitable apportionment of the marital property would not result in significant assets for Wife. Therefore the award of attorney's fees was appropriate. We find no error.

**CONCLUSION**

Accordingly, the decision of the trial court is

**AFFIRMED AS MODIFIED.**

**SHORT, THOMAS, and HILL, JJ., concur.**