517 S.E.2d 720

**Patricia Riley MORRIS, Appellant,**

v.

**Ronnie Dean MORRIS, Respondent.**

**No. 2994.**

Court of Appeals of South Carolina.

Heard April 15, 1999.

Decided May 10, 1999.

---

**5.** Because of our disposition on this issue, we need not reach Bray's remaining exceptions raised in this appeal.

526

J. Falkner Wilkes, of Meglic & Wilkes, of Greenville, for appellant.

Timothy L. Brown, of Greenville, for respondent.

HEARN, Judge:

In this divorce case, Patricia Riley Morris (Wife) appeals from the family court's award of equitable distribution and alimony. Wife also appeals from the family court's failure to order Ronnie Dean Morris (Husband) to pay child support for one of the parties' adult children. We affirm as modified.

The parties were married in September of 1966. They have four children, the youngest of whom was still a minor at the time of trial. The two oldest children have learning disabilities and reside with Wife in the marital home, along with the youngest child.

Throughout their marriage, Husband worked for Proctor and Gamble and provided almost all of the family's financial support. Due to opportunities for his career advancement, the family moved four times over twenty-six years. The final move was to Greenville, South Carolina, where the parties have resided since 1987. Wife primarily cared for the children when they were young, but was also employed sporadically and attended college at several different schools. At the time

of trial, she lacked only seventeen credit hours to complete a degree in landscape architecture from Clemson University.

Wife brought this action against Husband in 1995 seeking, *inter alia*, a divorce on the ground of adultery, equitable distribution of marital property and debt, alimony, custody of the parties' minor child, child support for the minor child, and child support for two of the parties' adult children.

By order dated May 6, 1997, the family court granted Wife a divorce on the ground of adultery and awarded her custody of and child support for the parties' minor child, a portion of the marital estate, and $1,500 per month in alimony. The family court also awarded child support for Lee, one of the parties' adult children, but denied Wife support for Andy, another adult child. This appeal followed.

## LAW/ANALYSIS

### I. Child Support

■ On appeal, Wife argues the family court erred in failing to award her child support for Andy. We disagree.

In September of 1993, Gary A. Jones, a clinical psychologist, evaluated Andy, who was twenty-four years old at the time of trial, to determine whether he suffers from a learning disability. Andy obtained an IQ score of seventy-five, which Dr. Jones testified "placed him in the borderline range of intellectual functioning ... between normal and retarded." However, Dr. Jones noted there was some indication Andy failed to "try as hard as he could on some parts of the test." Dr. Jones further noted Andy had scored higher on a previous IQ test. Dr. Jones also administered the Gates–McKinney test, which showed a fifth to sixth grade level for Andy's reading comprehension, with a considerably higher reading recognition score. According to Dr. Jones, Andy's compiled test results indicate he functions at a level below that properly classified as learning disabled.

Andy performed poorly in school and left high school at age twenty-one without graduating. He does not have a driver's license. Nonetheless, it is undisputed Andy works and can make financial contributions to his own support. At the time of trial, Andy had been employed on a full-time basis as a

convenience store clerk for one and one-half years. His employment duties include working without supervision for eight hours at a time. Between May 1995 and December 1996, Andy earned $6.45 per hour and grossed $30,574.51.

South Carolina Code section 20–7–420(17) (Supp.1998), empowers the family court "to provide for child support past age eighteen where there are physical or mental disabilities of the child or other exceptional circumstances that warrant the continuation of child support beyond age eighteen for as long as the physical or mental disabilities or exceptional circumstances continue." Wife argues that Andy requires support in order to remain employed because she provides his transportation to and from work. This requires her to be available to drive him and thus precludes her from working herself.

We find this argument unavailing for several reasons. First, Andy has taken taxis to work when Wife was unavailable to drive him and is able to make those arrangements himself. Second, Andy earns enough at his job to be able to pay for transportation to and from work. He could pay his mother as easily as he could pay a taxi. Third, the support Wife argues Andy needs is not necessarily financial, but is rather general guidance in his daily life. While we do not know whether Andy is capable of living on his own, we do think he is clearly capable of contributing financially to his own support.

We note the marked difference between Andy's and his brother Lee's needs for financial support. Lee, who was twenty-three at the time of trial, suffers from severe emotional problems with a documented history of inappropriate social behavior. He has never had a job, has an explosive temper, and has difficulty completing routine tasks. Wife and Lee's sister testified that Lee engages in ritualistic behaviors from arranging the dishes in the dishwasher in a set manner to taking excessive time to sweep a floor. If interrupted in the middle of a task, Lee must start over from the beginning of the routine. At the time of trial, Lee's bed consisted of a sleeping bag on cardboard and carpet scraps he had placed over the joists in the attic storage space under the eaves of the home. The family court judge found Lee's limitations severe

enough to order Husband to continue supporting Lee financially, and Husband does not dispute that obligation.

In contrast, Andy, while impaired, simply does not have limitations that prevent him from gainful employment outside the home. Under the facts and circumstances of this case, we are compelled to agree with the family court that Wife failed to establish exceptional circumstances sufficient to require Husband to support Andy. Clearly, Andy has demonstrated an ability, despite his learning difficulties, to support himself financially. We find no abuse of discretion in the family court's determination of this issue.

II. Equitable Apportionment

■ Wife next argues the family court erred in awarding her only forty-five percent of Husband's retirement account. Specifically, Wife asserts the family court failed to give adequate weight to her contributions to the marriage or Husband's fault in the breakdown of the marital relationship. We disagree.

■ "The doctrine of equitable distribution is based on a recognition that marriage is, among other things, an economic partnership." *Mallett v. Mallett,* 323 S.C. 141, 150, 473 S.E.2d 804, 810 (Ct.App.1996). Upon dissolution of the marriage, marital property should be divided and distributed in a manner which fairly reflects each spouse's contribution to its acquisition, regardless of who holds legal title. *Id.*

■ The apportionment of marital property is within the family court judge's discretion and will not be disturbed on appeal absent an abuse of discretion. *Bungener v. Bungener,* 291 S.C. 247, 251, 353 S.E.2d 147, 150 (Ct.App.1987). South Carolina Code section 20–7–472 (Supp.1998), lists fifteen factors for the court to consider in making an equitable apportionment of the marital estate. The statute vests in the family court the discretion to decide what weight should be assigned to the various factors. On review, this court looks to the overall fairness of the apportionment, and if the end result is equitable, that this court might have weighed specific factors differently than the family court is irrelevant. *Johnson v. Johnson,* 296 S.C. 289, 300–01, 372 S.E.2d 107, 113 (Ct.App. 1988).

■ Our review of the record convinces us the family court's award to Wife of forty-five percent of Husband's retirement account is fair and equitable under the circumstances. Although fault is one factor for the court to consider in equitably dividing marital property, it does not justify a severe penalty. *Noll v. Noll,* 297 S.C. 190, 196, 375 S.E.2d 338, 342 (Ct.App.1988); *Rampey v. Rampey,* 286 S.C. 153, 156, 332 S.E.2d 213, 214 (Ct.App.1985); *Gibson v. Gibson,* 283 S.C. 318, 325, 322 S.E.2d 680, 684 (Ct.App.1984). The family court expressly considered several relevant factors in determining an appropriate division of Husband's retirement account, including the length of the marriage, the earning potential of each spouse, tax consequences, existence of other obligations, the ability of each party to meet their financial obligations and expenses, and that "[H]usband was at fault but not entirely in ending the marriage." In light of the family court's finding that Husband contributed almost all of the family's financial support during the marriage and contributed indirect support equal to Wife's indirect contributions, we do not think the family court abused its discretion in dividing the retirement account.

III. Alimony

■ Wife argues the family court erred in awarding her only $1,500 per month in alimony. We agree.

■ An award of alimony rests within the sound discretion of the family court and will not be disturbed absent an abuse of discretion. *Williams v. Williams,* 297 S.C. 208, 210, 375 S.E.2d 349, 350 (Ct.App.1988). "Alimony is a substitute for the support that is normally incident to the marital relationship." *Johnson v. Johnson,* 296 S.C. 289, 300, 372 S.E.2d 107, 113 (Ct.App.1988). Alimony should ordinarily place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage. *Id.* It is the family court's duty to make an alimony award that is fit, equitable, and just if the claim is well-founded. *Woodward v. Woodward,* 294 S.C. 210, 217, 363 S.E.2d 413, 417 (Ct.App. 1987).

Factors to be considered in making an alimony award include: (1) duration of the marriage; (2) physical and emo-

tional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses of the parties; (8) equitable apportionment; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; and (12) prior support obligations. S.C.Code Ann. § 20–3–130(C) (1976 & Supp.1998). No one factor is dispositive. *Lide v. Lide,* 277 S.C. 155, 157, 283 S.E.2d 832, 833 (1981).

Both Husband and Wife were fifty years old at the time of trial. Although Wife was unemployed at the time of trial, she has attended some college and established a work history during the course of the marriage. In determining the award of alimony to Wife, the family court imputed an annual income of $16,000 to $17,000 to her. Husband's annual income, with benefits, at the time of trial was $108,000.

A review of the family court's order reveals a studied application of the factors relevant to an alimony award, including the court's consideration of Wife's earning capacity. However, in light of the fact that Husband earns a considerable income, Wife's standard of living has dropped significantly, and Husband admitted to adultery, we find the family court's award of $1,500 per month inadequate. We therefore order Husband to pay an increased award of $2,000 per month in alimony to Wife, commencing with the month of May 1999.

IV.  Exclusive Possession of Marital Home

Wife next contends the family court erred in failing to award her exclusive use of the marital home as an incident of support. We disagree.

At the time of trial, the parties' marital home had a fair market value of $185,000 and a $93,000 mortgage indebtedness. The family court divided the $92,000 in equity equally between the parties and ordered Wife to purchase Husband's $46,000 share of the equity within 120 days of the order. Alternatively, the family court ordered the parties to sell the home.

In South Carolina, family courts may grant a spouse possession of a marital home as an incident of support.

*Whitfield v. Hanks,* 278 S.C. 165, 293 S.E.2d 314 (1982). This court has recognized, however, that such awards are burdensome upon the party who must defer realization of the value of his or her share of the martial home. *Johnson v. Johnson,* 285 S.C. 308, 311, 329 S.E.2d 443, 445 (Ct.App.1985). In light of this burden, we have held that before awarding a spouse exclusive use of the home as an incident of support, "the court must carefully consider the claim of a party that the interests of that party or the children are so predominant, when balanced against the interests of the other, that an award of exclusive possession of the marital home is compelled." *Id.* Some, but not all, of the compelling interests the court may consider are: (1) adequate shelter for minors; (2) the inability of the occupying spouse to otherwise obtain adequate housing; (3) the size of the non-occupying spouse's equity in the home relative to his other assets or income; (4) the size of the home relative to the expected use and the cost of maintaining the home in comparison to the benefits received; and (5) the potential duration of the exclusive possession. *Thompson v. Brunson,* 283 S.C. 221, 227–28, 321 S.E.2d 622, 625 (Ct.App. 1984); *Johnson,* 285 S.C. at 311, 329 S.E.2d at 445.

Wife argues that even if she were actually earning the income the family court imputed to her, she could not afford to stay in the marital home and purchase the husband's equity. Thus, she alleges she will be forced to sell the home and move. Not only would it be difficult to find a home large enough to accommodate herself and the three sons that live with her, but it would be extremely disruptive for the family. Alternatively, Wife argues that to remain in the house and purchase Husband's equity would force her to liquidate part of her portion of the retirement account, subjecting her to taxes and penalties. Wife portrays either scenario as punitive and urges this court to award her the marital home as an incident of support.

We note that this marriage had only two assets of any significant value: the marital home and the retirement account. By delaying Husband's realization of his equity in the home, he is left with no liquid assets with which to establish his new life, apart from the income he earns. Considering that Wife will be receiving an increased alimony award of $2,000 per month, that Wife receives $925.11 per month in child support, that Andy can contribute financially to his

support, and that Wife's earning potential will increase significantly once she completes her remaining seventeen credit hours in the Clemson University landscape architecture degree program, we do not find it impossible or onerous for Wife to purchase Husband's equity. On the other hand, delaying the disposition of the marital home would be onerous to Husband, and because it is uncertain when or if Andy and Lee could ever live on their own, such a delay may be lengthy. Consequently, we find the family court did not err in its order as to disposition of the marital home.

For the foregoing reasons, the decision of the family court is **AFFIRMED AS MODIFIED.**

HUFF and STILWELL, JJ., concur.