WILLIAMS, J.:
**125 In this domestic relations matter, James Rory Smith (Husband) appeals the family court's divorce decree, arguing the family court erred in (1) imputing minimum wage income to Robin Carr Smith (Wife) and awarding Wife permanent periodic alimony; (2) in the alternative, if alimony was appropriate, not ordering rehabilitative alimony; (3) awarding Wife a larger allocation of the marital estate; and (4) awarding Wife primarily income-producing assets while awarding Husband primarily deferred-compensation assets. On cross-appeal, Wife asserts the family court erred in (1) failing to include Husband's bonus in the marital estate; (2) allocating payment of the 401(k) mortgage loan to Wife; (3) finding that the parties' 208 Wescott property transmuted into marital property; (4) in the alternative, if the 208 Wescott property is marital property, failing to expressly consider Wife's "special equity" regarding Wife's nonmarital funds used to acquire the property; and (5) unfairly apportioning the marital estate. We affirm in part and reverse in part.
FACTS/PROCEDURAL HISTORY
Husband and Wife married on February 28, 2003. The parties had twins-a son and a daughter-who were ten years old at the time of the divorce hearing. This was the second marriage for both parties, and Husband had two adult children from his previous marriage. Wife received a high school education and Husband attended two years of college.
After getting married, the parties lived in Wife's premarital home in Roswell, Georgia, where Wife worked in the insurance-claims **126 industry, earning an income of approximately $66,000. Husband maintained stable employment with Duke Energy. Husband's starting salary with Duke Energy in 2004 was $92,821; however, after receiving substantial pay increases throughout the marriage, Husband earned $182,128.10 in 2014 as a senior nuclear reactor operator. Husband's 2014 income included his annual incentive pay bonus of $21,522.03 and overtime pay of $20,369.64.
In 2005 Wife sold her premarital home in Georgia, and the parties moved to South Carolina where they built their current residence *773 at 208 Wescott. Upon selling Wife's premarital home, Wife deposited the sale proceeds into the SunTrust bank account that Husband also deposited his income. The parties utilized $90,000 of the sale proceeds in the SunTrust account as a down payment on 208 Wescott. However, the mortgage and title for 208 Wescott were solely in Wife's name. When the parties moved into 208 Wescott, they agreed Wife would quit her job to become a stay-at-home mother for their newborn twins, resulting in Wife's unemployment for a majority of the marriage. Accordingly, Husband's income was the parties' sole income at the time and was used to pay for the 208 Wescott mortgage and later improvements to the property.[1] In subsequent years, the parties purchased six income-producing rental properties with Husband's income.
Throughout the marriage, Wife managed the rental properties, which brought in a net income of $1,095 per month after the mortgage payment.
Wife testified that, in 2008, she discovered Husband placed and answered ads soliciting extra-marital relations on Craigslist and dating websites. When Wife confronted Husband and asked him to participate in counseling, Husband refused. Wife further testified that, in 2012, she discovered Husband was still engaged in extra-marital relations, and Husband and his paramour solicited third parties on Craigslist to engage in group sex. Husband admitted he committed adultery with numerous women throughout the marriage and engaged in unprotected sex twice; however, Husband denied he engaged **127 in group sex. Husband testified he began committing adultery in 2008 due to Wife's "severe lack of affection."[2]
On December 27, 2013, Wife filed an action in family court, seeking a divorce on the grounds of adultery, custody of the minor children, alimony, equitable division of the marital estate, attorney's fees and costs, and related relief. Husband answered and counterclaimed, seeking separate support and maintenance, equitable division of the marital estate, resolution of all issues related to the parties' minor children, attorney's fees and costs, and related relief. On April 16, 2015, the family court issued a final divorce decree, granting Wife a divorce on the ground of Husband's adultery.
The family court determined it was not reasonable for Husband to sustain earning his 2014 overtime pay of $20,369.64, but it was reasonable for Husband to earn at least $12,000 in overtime pay. Based on $12,000 in overtime pay, the court determined Husband's annual earning capacity was $174,000. The family court imputed minimum wage income to Wife, noting the court "did not have sufficient evidence on which to base a determination of Wife's earning potential." The family court awarded Wife 57.2% and Husband 42.8% of the $1,018,909[3] gross marital estate; $12,000 for attorney's fees and costs; custody of the parties' two minor children; specified visitation for Husband; and granted Wife's request to relocate with the minor children to Jefferson, Georgia. The family court ordered Husband to pay $1,500 per month to Wife in permanent periodic alimony and $1,345 per month in child support. The family court also awarded Wife five of the parties' six rental properties, including 504 E. College, which had a debt of $33,742 owed to Husband's 401(k) account, and ordered "Wife shall be solely responsible for the indebtedness of the properties she is awarded." However, the family court awarded Husband his 401(k) account and ordered that Wife's alimony payment be reduced by $340 per month, which reduced Husband's monthly alimony payment to $1,160, until Wife paid the loan on the 401(k) in full.
**128 Both parties filed motions to reconsider. On November 2, 2015, the family court issued an order modifying the divorce decree. The modifications increased Husband's share of the marital estate to 45.7% and decreased *774 Wife's share to 54.3%. The amended order also awarded Husband the parties' 2014 tax refund and modified Husband's monthly alimony deduction for the 401(k) loan from $340 to $400 per month, which reduced Husband's alimony payment to $1,100 per month until Wife paid the 504 E. College loan in full. This cross-appeal followed.
STANDARD OF REVIEW
The appellate court reviews decisions of the family court de novo. Stoney v. Stoney , 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018) (per curiam). In a de novo review, the appellate court is free to make its own findings of fact but must remember the family court was in a better position to make credibility determinations. Lewis v. Lewis , 392 S.C. 381, 385, 709 S.E.2d 650, 651-52 (2011). "Consistent with this de novo review, the appellant retains the burden to show that the family court's findings are not supported by a preponderance of the evidence; otherwise, the findings will be affirmed." Ashburn v. Rogers , 420 S.C. 411, 416, 803 S.E.2d 469, 471 (Ct. App. 2017). On the other hand, evidentiary and procedural rulings of the family court are reviewed for an abuse of discretion. Stoney , 422 S.C. at 594 n.2, 813 S.E.2d at 486 n.2.
LAW/ANALYSIS
I. Husband's Appeal
On appeal, Husband argues the family court erred in (1) imputing minimum wage income to Wife and awarding Wife permanent periodic alimony; (2) in the alternative, if alimony was appropriate, not ordering rehabilitative alimony; (3) awarding Wife a larger allocation of the marital estate; and (4) awarding Wife primarily income-producing assets while awarding Husband primarily deferred-compensation assets.[4]
**129 A. Imputing Minimum Wage and Alimony
Husband first argues the family court erred by imputing minimum wage income to Wife, and as a result, awarding Wife alimony. We disagree.
"Alimony is a substitute for the support normally incidental to the marital relationship." Crossland v. Crossland , 408 S.C. 443, 451, 759 S.E.2d 419, 423 (2014). "Alimony should ordinarily place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage." Hinson v. Hinson , 341 S.C. 574, 577, 535 S.E.2d 143, 144 (Ct. App. 2000) (per curiam). The family court has a duty to formulate an alimony award that is "fit, equitable, and just if the claim is well[-]founded." Allen v. Allen , 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct. App. 2001). In making an alimony award, the family court must consider the following statutory factors: (1) the duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses of the parties; (8) marital and nonmarital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; (12) prior support obligations; and (13) any other factors the court considers relevant. S.C. Code Ann. § 20-3-130(C) (2014).
Specifically, Husband argues the family court should have imputed more than minimum wage income to Wife based on Wife's ability to earn: (1) a minimum of $50,000[5] in the insurance industry prior to becoming a *775 stay-at-home mother to the parties' twins, (2) the $40,000 gross annual rental **130 income of the five rental properties awarded to Wife in the equitable distribution, and (3) the monthly child support obligation of $1,430 based on a $90,000[6] annual gross income. Husband further argues that, if Wife obtained a job in the insurance industry, she would be capable of sustaining a standard of living similar to the one she enjoyed during the marriage with no need for any form of alimony. We disagree.
We find the family court did not err in awarding Wife $1,500 per month in permanent periodic alimony. The record reflects that, at the time of trial, Wife was fifty-five years old and Husband was fifty-seven years old; the parties were married for about eleven years; and Husband's adultery contributed to the demise of the marriage. The parties maintained a good standard of living, the marital residence was valued at $375,000, with an equity of $195,000, and the parties took several vacations per year. Husband had a slightly higher level of education and maintained employment with Duke Energy with substantial pay increases throughout the marriage. Husband's nonmarital retirement contributions and his anticipated earning potential were much greater than Wife's. The parties agreed Wife would leave the insurance industry in 2005 to become a stay-at-home mother for the parties' twins, resulting in Wife's absence from the work force for approximately ten years.[7] However, throughout the marriage, Wife managed the parties' rental properties which brought in a net monthly income of $1,095. Husband and Wife worked together to find and procure the rental properties. Husband assisted with rental property renovations and Wife managed the day-to-day operations of the rental properties. Wife listed, showed, and procured renters for the parties' vacant properties, paid the bills, and collected the rents from tenants-at times driving to collect rent from a tenant several times a week. Upon de novo review of both parties' financial declarations; monthly expenses; net monthly incomes; and nonmarital property, we **131 find Wife has a need for alimony and Husband has an ability to pay. We also find Wife's need for alimony is reasonable under the circumstances.
There is little testimony regarding Wife's current and reasonably anticipated earning capacity. Beyond Wife's 2005 earning capacity in the insurance industry, Husband offered no expert testimony, nor any witness testimony, as to Wife's earning capacity. However, Wife has been absent from the work force for an extended period of time and forewent opportunities for advancement in favor of being a homemaker. See Jenkins v. Jenkins , 345 S.C. 88, 97, 545 S.E.2d 531, 536 (Ct. App. 2001) (finding the wife was entitled to an award of permanent periodic alimony in part because the wife had been absent from the work force for ten years and forewent opportunities for advancement to be a homemaker). Determining Wife's current and reasonably anticipated earning potential based solely on evidence of Wife's 2005 earning capacity after a ten-year absence would require the court to engage in improper speculation. Sexton v. Sexton , 308 S.C. 37, 42, 416 S.E.2d 649, 653 (Ct. App. 1992) (reversing an alimony award when the award was "based on an unsupported finding of the husband's earning capacity"), rev'd on other grounds , 310 S.C. 501, 427 S.E.2d 665 (1993).
There is insufficient evidence to determine Wife's reasonably anticipated earning potential beyond Wife's net monthly income of $1,095 from the rental properties. See Crossland , 408 S.C. at 454-55, 759 S.E.2d at 425 (finding that, because the family court did not have sufficient evidence to base a determination of the wife's earning potential for purposes of awarding alimony, it properly refused to engage in speculation). Based on our view of the facts and relevant factors, we find the income imputed to Wife is reasonable. See McElveen v. McElveen , 332 S.C. 583, 600, 506 S.E.2d 1, 9 (Ct. App. 1998) (considering the wife's financial declaration *776 and monthly expenses in determining if the family court's alimony award was reasonable under the circumstances of the case), disapproved of on other grounds by Wooten v. Wooten , 364 S.C. 532, 615 S.E.2d 98 (2005). We affirm the family court's award of alimony. See Patel v. Patel , 347 S.C. 281, 291, 555 S.E.2d 386, 391 (2001) (stating the objective of alimony should be to **132 ensure that the parties separate on as equal a basis as possible).
B. Rehabilitative Alimony
Husband alternatively argues that, if an alimony award was appropriate, the family court erred by not ordering rehabilitative alimony because (1) the parties' marriage was relatively short in duration and (2) Wife was able to earn substantial income in the insurance industry. We disagree.
"If a claim for alimony is well-founded, the law favors the award of permanent periodic alimony." Jenkins , 345 S.C. at 95, 545 S.E.2d at 535. "Rehabilitative alimony may be awarded only upon a showing of special circumstances justifying a departure from the normal preference for permanent periodic support." Id. "The purpose of rehabilitative alimony is to encourage a dependent spouse to become self[-]supporting after a divorce." Johnson v. Johnson (Johnson 1988 ), 296 S.C. 289, 301, 372 S.E.2d 107, 114 (Ct. App. 1988). "However, it should be approved only in exceptional circumstances, in part, because it seldom suffices to maintain the level of support the dependent spouse enjoyed as an incident to the marriage." Jenkins , 345 S.C. at 95, 545 S.E.2d at 535. In awarding rehabilitative alimony, the family court should consider several factors, including, among other things, the parties' accustomed standard of living; the time necessary for the supported spouse to acquire job training or skills; the likelihood that the supported spouse will successfully complete retraining; and the likelihood of success in the job market. See id. "The record must demonstrate the self-sufficiency of the recipient at the expiration date of the ordered payments and that the supported spouse will match the prior standard of living accustomed to during the marriage." Belton v. Belton , 325 S.C. 456, 460, 481 S.E.2d 174, 176 (Ct. App. 1997).
We find no evidence to support Husband's claim that rehabilitative alimony is appropriate. The record fails to demonstrate exceptional circumstances, the time necessary for Wife to acquire job training or skills, the likelihood that Wife will successfully complete retraining, or Wife's likelihood of success in the job market sufficient to completely support herself. See id. (reversing a rehabilitative alimony award because the **133 record failed to show exceptional circumstances or provide evidence that the wife would succeed in her business venture); Crawford v. Crawford , 301 S.C. 476, 484, 392 S.E.2d 675, 680 (Ct. App. 1990) (holding no evidence existed to demonstrate that the wife would be reasonably self-sufficient at the termination of the alimony payments). Thus, we find Husband failed to prove special circumstances justifying a departure from the normal preference for permanent periodic alimony. See Jenkins , 345 S.C. at 97, 545 S.E.2d at 536 (reversing a rehabilitative alimony award and awarding permanent periodic alimony because the wife had been absent from the work force for ten years, forewent opportunities for advancement in favor of being a homemaker, and the record was devoid of evidence showing that the wife would, at the termination of the alimony payments, be able to maintain a lifestyle approaching that which she enjoyed during the marriage or even to meet her basic expenses).
Husband also argues the short duration of the parties' marriage weighs in favor of rehabilitative alimony. In making an alimony award, "no one factor is dispositive." Allen , 347 S.C. at 184, 554 S.E.2d at 425 ; Nienow v. Nienow , 268 S.C. 161, 171, 232 S.E.2d 504, 510 (1977) (holding that in alimony considerations, "all of the facts and circumstances disclosed by the record should be considered; no one factor should be determined dispositive"). Husband overlooks the fact that his own extra-marital conduct and refusal to go to counseling contributed to the demise of the marriage and that other factors, previously discussed in this opinion, weigh in favor of awarding Wife permanent periodic alimony. See *777 Pirri v. Pirri , 369 S.C. 258, 268-69, 631 S.E.2d 279, 285 (Ct. App. 2006) ("[South Carolina] courts have not determined that a relatively short marriage is the single determinative factor in denying alimony; alimony has been found proper in some cases where the marriage was of a much shorter duration than [nearly eight years]"); Johnson 1988 , 296 S.C. at 302-03, 372 S.E.2d at 114 ("An at[-]fault spouse cannot destroy a marriage and then claim its short duration entitles him to more favorable consideration when the economic adjustments attendant to divorce are made.").
Based on our de novo review of the relevant factors and the circumstances of this case, we find no error in the family **134 court's refusal to award rehabilitative alimony to Wife. See Lewis , 392 S.C at 384, 709 S.E.2d at 651 (holding the appellate court may find facts in accordance with its own view of the preponderance of the evidence); Allen , 347 S.C. at 184, 554 S.E.2d at 424 (stating the family court has a duty to formulate an alimony award that is "fit, equitable, and just if the claim is well[-]founded"). Accordingly, we affirm the family court's award of $1,500 per month in permanent periodic alimony to Wife.
II. Wife's Cross-Appeal
On cross-appeal, Wife argues the family court erred in (1) failing to include Husband's bonus in the marital estate; (2) allocating payment of the 401(k) mortgage loan to Wife while allocating the 401(k) account to Husband; (3) finding that 208 Wescott transmuted into marital property; (4) in the alternative, if 208 Wescott is marital property, failing to expressly consider Wife's special equity regarding Wife's nonmarital funds used to acquire the property;[8] and (5) unfairly apportioning the marital estate.
A. Husband's Bonus
Wife argues the family court erred in failing to include Husband's $21,522.03 incentive pay bonus for services rendered in 2013. We agree.
Marital property is property "acquired by the parties during the marriage." S.C. Code Ann. § 20-3-630 (2014). "This court has previously held that pensions and other benefits are clearly marital property because they are compensation for services performed during the marriage although not received until a later time." Lineberger v. Lineberger , 303 S.C. 248, 250, 399 S.E.2d 786, 787 (Ct. App. 1990).
Although Wife filed for divorce on December 27, 2013-nearly three months prior to Husband receiving his incentive pay bonus on March 15, 2014-Husband received an incentive pay bonus each year in his March 15 paycheck, and the bonus was for services rendered in 2013-during the marriage. Therefore, because the bonus was compensation for services **135 performed during the marriage, the bonus was marital property and should have been included in the marital estate. See id. (finding that end-of-year performance and retention bonuses can be divided as marital property even if they will not be received until after the divorce if the bonuses were part of the overall income of the parties during the marriage and received as compensation for services performed during the marriage). Accordingly, the family court should have included Husband's $21,522.03 incentive pay bonus in the marital estate. We modify the family court's order to include Husband's bonus in the marital estate.
B. 401(k) Mortgage Loan
Wife argues the family court improperly reduced Wife's percentage of the marital estate and Wife's alimony by allocating responsibility of the 504 E. College 401(k) loan to Wife while allocating the 401(k) account to Husband. Specifically, Wife argues the family court erred by not severing the parties' joint interest in 504 E. College and by reducing Husband's alimony payments as a means to effectuate property division. We agree.
The family court should attempt to sever all entangling legal relationships and to place the parties in a position to begin anew. Johnson v. Johnson (Johnson 1985 ), 285 S.C. 308, 311, 329 S.E.2d 443, 445 (1985). The family court is "encouraged to make *778 final disposition of property interests whe[n] possible; failing in this, the [family] courts must state compelling reasons for leaving loose ends." Bass v. Bass , 285 S.C. 178, 182, 328 S.E.2d 649, 652 (Ct. App. 1985).
In the equitable distribution, the family court awarded Wife 504 E. College and the responsibility to pay the corresponding loan from Husband's 401(k) account. Conversely, the family court awarded Husband his 401(k) account and reduced Wife's monthly alimony award by $400 per month until Wife paid the $33,742 loan on the 401(k) account in full. Allocating the 401(k) account to Husband and a considerable debt against the 401(k) account to Wife did not sever the parties' joint interests in 504 E. College. Rather, it would take roughly eighty-four months-at an alimony reduction rate of $400 per month-to satisfy the $33,742 loan and sever the parties' interest in the **136 property. The family court failed to state a compelling reason for not severing the parties' interest in the property, and we do not find a compelling reason in the record on appeal. See Shealy v. Shealy , 280 S.C. 494, 498 n.1, 313 S.E.2d 48, 50 n.1 (Ct. App. 1984) (stating the family court is "encouraged to make final dispositions of property interests whe[n] possible or, in the alternative, cite compelling reasons for awarding fractional or joint interests").
We find the family court erred in not severing the parties' interest in 504 E. College. We modify the family court's equitable distribution accordingly, as discussed herein.
C. Transmutation
Wife argues the family court erred in finding 208 Wescott transmuted into marital property. We disagree.
With certain exceptions, marital property is "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation ... regardless of how legal title is held." S.C. Code Ann. § 20-3-630(A) (2014). "Equitable distribution of marital property 'is based on the recognition that marriage is, among other things, an economic partnership.' " Crossland , 408 S.C. at 456, 759 S.E.2d at 426 (quoting Morris v. Morris , 335 S.C. 525, 531, 517 S.E.2d 720, 723 (Ct. App. 1999) ). Moreover, "[u]pon dissolution of the marriage, marital property should be divided and distributed in a manner [that] fairly reflects each spouse's contribution to its acquisition, regardless of who holds legal title." Id. (quoting Morris , 335 S.C. at 531, 517 S.E.2d at 723 ).
Nonmarital property may be transmuted into marital property if "[1] it becomes so commingled with marital property that it is no longer traceable, [2] is titled jointly, or [3] is used by the parties in support of the marriage or in some other way that establishes the parties' intent to make it marital property." Wilburn v. Wilburn , 403 S.C. 372, 384, 743 S.E.2d 734, 740 (2013). "Transmutation is a matter of intent to be gleaned from the facts of each case. The spouse claiming transmutation must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage."
**137 Jenkins , 345 S.C. at 98, 545 S.E.2d at 537. Evidence of transmutation "may include placing the property in joint names, transferring the property to the other spouse as a gift, using the property exclusively for marital purposes, commingling the property with marital property, using marital funds to build equity in the property, or exchanging the property for marital property." Johnson 1988 , 296 S.C. at 295, 372 S.E.2d at 111. "The mere use of separate property to support the marriage, without some additional evidence of intent to treat it as property of the marriage, is not sufficient to establish transmutation." Id. at 295-96, 372 S.E.2d at 111.
First, we find the record demonstrates that the parties' regarded the property as common property of the marriage. Wife testified that, while she was pregnant with the twins, the parties contemplated where to make their "home" and where to raise their twins before ultimately deciding to move to South Carolina and build 208 Wescott. We find this illustrates Wife's intent not to buy the residence to keep as separate property, but to live in together and to raise the parties' twins. See *779 Johnson 1988 , 296 S.C. at 295, 372 S.E.2d at 111 (providing that using the property exclusively for marital purposes is evidence that the parties regard the property as common property).
Second, we agree with the family court's finding that the $90,000 down payment on 208 Wescott-from the sale of Wife's premarital home-was deposited into the SunTrust bank account that Husband deposited his earnings. Wife testified she could not provide evidence to account for the premarital funds in the SunTrust account. The commingling of the $90,000 with marital funds transmuted the $90,000 into marital property. See Wilburn , 403 S.C. at 384, 743 S.E.2d at 740 (providing nonmarital property can transmute into marital property if it becomes so commingled with marital property that it is no longer traceable).
Third, we find the parties used marital funds to build equity in the residence. The parties used funds from the SunTrust account, which held Husband's income and the rental income, to pay the 208 Wescott mortgage and for substantial improvements to the property. Husband earned his income during the marriage, the parties used the income to purchase the rental **138 properties, and the rental property income was generated during the marriage, therefore, both Husband's income and the rental income were marital property. See Hamiter v. Hamiter , 290 S.C. 508, 510, 351 S.E.2d 581, 582 (Ct. App. 1986) (providing funds derived from salary earned during the marriage are marital property); Orszula v. Orszula , 292 S.C. 264, 266, 356 S.E.2d 114, 114 (1987) (per curiam) (providing wages and substitutes for wages received during marriage are marital property). The parties built equity in 208 Wescott by using marital funds to pay the mortgage and for substantial improvements to the property. See Johnson 1988 , 296 S.C. at 295, 372 S.E.2d at 111 (providing that using marital funds to build equity in the property is evidence the parties regard the property as common property).
We find a preponderance of the evidence shows the parties treated 208 Wescott in such a manner during the marriage as to show their intent that it become their common property. We affirm the family court's finding that 208 Wescott transmuted into marital property.
D. Apportionment
Husband argues that, based on the short duration of the marriage and the parties' respective contributions to acquiring the marital assets, the family court erred by apportioning 54.3% of the marital estate to Wife and 45.7% to Husband. Conversely, in her cross-appeal, Wife argues the family court's apportionment of the marital estate is unfair in light of all of the evidence, including Wife's direct and indirect contributions to the marital estate and Husband's extreme marital misconduct. We agree with Wife.
In making an equitable apportionment of marital property, the family court must give weight in such proportion as it finds appropriate to the following factors: (1) the duration of the marriage; (2) marital fault; (3) the value of the marital property and the contribution of each spouse to the acquisition, preservation, depreciation, or appreciation in value, including contributions as homemaker; (4) the income and earning potential of the parties and the opportunity for future acquisition of capital assets; (5) the parties' health; (6) additional training or education needed; (7) the parties' nonmarital **139 property; (8) the existence or non-existence of vested retirement benefits; (9) the award of alimony; (10) the desirability of awarding the family home; (11) tax consequences; (12) prior support obligations; (13) liens and any other encumbrances upon the marital property; (14) child custody arrangements and obligations; and (15) any other factors the court considers relevant. S.C. Code Ann. § 20-3-620(B) (2014). These criteria are intended to guide the family court in exercising its discretion over apportionment of marital property. Johnson 1988 , 296 S.C. at 297, 372 S.E.2d at 112. "The ultimate goal of [equitable] apportionment is to divide the marital estate, as a whole, in a manner that fairly reflects each spouse's contribution to the economic partnership and also the effect on each of the parties of ending that partnership." King v. King , 384 S.C. 134, 143, 681 S.E.2d 609, 614 (Ct. App. 2009). *780 In addition to certain findings of fact relating to this marriage, the record reflects that Wife, using premarital funds that transmuted into marital property, contributed $90,000 as a down payment on the marital residence and the family court appropriately included the $90,000 in the marital estate as equity in 208 Wescott. See Pittman v. Pittman , 407 S.C. 141, 153, 754 S.E.2d 501, 507 (2014) ("When property is determined to have been transmuted, the entire property, not just a portion of the property, is included in the parties' marital property which is thereafter apportioned by the family court using the criteria set forth in [the equitable apportionment statute.]" (alteration in original) (quoting Calhoun v. Calhoun , 339 S.C. 96, 106, 529 S.E.2d 14, 20 (2000) ) ). Additionally, the record reveals the parties were married for eleven years, Husband engaged in marital misconduct, and Husband refused to seek counseling, which contributed to the demise of the marriage. Husband earned a majority of the parties' income throughout the marriage, he worked long hours, and contributed to the renovations of the parties' rental properties. Husband's earning potential is much greater than Wife's, and he can contribute more to his retirement account through his continued employment with Duke Energy. Wife acted as homemaker and was responsible for vacuuming, cleaning sinks and baseboards, shopping, cooking, doing laundry, and other household duties. Wife was the primary caretaker of the parties' two minor children: she got the children ready for **140 school, transported the children to and from school and doctors appointments, volunteered at the children's school, and was more active in the children's educational development. Wife successfully managed the parties' income-producing rental properties. Wife managed the day-to-day operations of the rental properties; she listed, showed, and procured renters for the parties' vacant properties; she paid the bills; and she collected the rents from tenants-sometimes going to a rental property several times a week to collect rent. Subsequent to the filing of this action, Wife assumed sole responsibility for the mortgage payments for 208 Wescott and reduced the mortgage balance by $5,000 from the date of filing to the date of trial.
We find the family court's 54.3/45.7 division of the marital estate, in favor of Wife, resulted in an unfairly low apportionment to Wife in light of the aforementioned circumstances. Accordingly, we find that, based on our de novo review of the preponderance of the evidence, the more equitable division of the marital residence is 60% to Wife and 40% to Husband.[9]
In light of our holding that Husband's 2013 bonus is part of the marital estate and that the equitable distribution should attempt to sever the parties' joint interest in 504 E. College, we modify the family court's equitable distribution to reflect these changes. To accomplish the 60/40 division, Husband shall be responsible for the $33,742 loan against his 401(k) account; this will effectively sever the parties' joint interest in the property. In addition, Wife is to receive Husband's bonus in the equitable distribution, totaling $21,522, plus an additional sum of $859 to accomplish the 60/40 division of marital property.[10]
CONCLUSION
Based on the foregoing analysis, the family court's order is
AFFIRMED IN PART and REVERSED IN PART.
LOCKEMY, C.J., and KONDUROS, J., concur.

Husband testified that $50,000 in improvements were made to 208 Wescott during the marriage.

Based on the circumstances of the case, the family court found Wife's decision to refrain from sex with Husband was reasonable.

This does not include Husband's 2013 tax return, which the family court excluded from the marital estate.

We decline to address Husband's fourth issue as the issue is not preserved for our review. See Nicholson v. Nicholson , 378 S.C. 523, 537, 663 S.E.2d 74, 81-82 (Ct. App. 2008) (stating an issue must have been raised to and ruled upon by the family court to be preserved on appeal, and if the family court does not rule on an issue and the appellant does not raise it in a Rule 59(e) motion, it is unpreserved). After the family court issued its order, Husband failed to raise the issue of inequitable distribution of income-producing and deferred-compensation assets to the family court in his Rule 59(e) motion. Because the family court did not have the opportunity to rule upon this issue or correct any alleged mistakes in its final order, we find this argument is unpreserved for our review.

Wife testified that, during her tenure with her prior employer in the insurance industry, she earned between $50,000 and $80,000 annually.

Husband calculated the $90,000 annual gross income from the sum of Wife's $40,000 annual gross rental income and the $50,000 Husband argues Wife is capable of earning in the insurance industry.

The twins were ten years old at the time of trial, and Wife indicated she intended to remain a stay-at-home mother until they left home for college.

We consider Wife's special equity issue in our discussion of the marital estate apportionment.

Upon review of the record and including Husband's 2013 bonus, we value the net marital estate at $744,686. Accordingly, under a 60/40 division, Wife is awarded $446,812 and Husband is awarded $297,874.

These modifications do not impact Wife's alimony award and Husband shall make no alimony deductions.