**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Heather L. Scherba, Respondent-Appellant,

v.

Ronald A. Scherba, Appellant-Respondent.

Appellate Case No. 2023-000949

———————

Appeal From Lexington County
FitzLee H. McEachin, Family Court Judge

———————

Opinion No. 6128
Heard September 9, 2025 – Filed January 14, 2026
Withdrawn, Substituted, and Refiled March 18, 2026

———————

**AFFIRMED IN PART, REVERSED IN PART**

———————

Carrie A. Warner, of Columbia, for
Appellant/Respondent.

Yulee E. Harrelson, of Columbia, and Leslie T. Sarji, of
Sarji Law Firm, of Charleston, both for
Respondent/Appellant.

———————

**THOMAS, J.:** In this cross-appeal from a divorce decree involving Heather L. Scherba (Wife) and Ronald A. Scherba (Husband), Husband appeals, arguing the family court erred in (1) awarding Wife alimony and (2) including nonmarital restricted stock units (RSUs[1]) as income in its alimony and child support

———————

[1] Companies may compensate employees in the form of RSUs. They are "restricted" because there are conditions that must be met (such as length of

calculations.  Wife appeals, arguing the family court erred in failing to award her attorney's and other fees.  We affirm in part and reverse in part.

**FACTS**

Husband and Wife married in 1999 and have two children.  They separated on August 1, 2020, and Wife commenced this action.  Husband answered and counterclaimed.  By temporary order, the family court determined Husband's gross monthly income was $25,286 and ordered him to pay $3,000 per month in child support and $3,000 per month in alimony.  The court later denied Husband's motions for reconsideration and requests for litigation-cost and living-expense advances, finding he could meet his needs by selling nonmarital Google restricted stock units (RSUs).[2]  In addition, Husband amended his answer and counterclaim, seeking a divorce based on the ground of one-year of continuous separation, imputation of income to Wife, equitable division of assets and debts, and attorney's fees and costs, among other relief.

The final hearing occurred over four days in February 2023.  The parties testified they lived frugally during the marriage, typically spending approximately $3,500 per month and carrying little debt.  Husband worked in the information technology (IT) field and was employed by Google from 2019 until 2023.  At the time of trial, he was unemployed but was seeking positions with comparable employers, including Microsoft and Meta.  Wife is licensed to practice law in Pennsylvania and served in the United States Air Force (USAF) Judge Advocate General Corps (JAG).  By agreement of the parties, she left active duty in 2014 to focus on raising the children.  She continued to serve as an Individual Mobilization Augmentee, requiring approximately 4.5 weeks of duty annually.  Wife reported income of $77,214 in 2022 and had been promoted from Major to Colonel.

---

employment or performance goals) before the shares vest.  Upon vesting, the ownership of the shares shifts to the employee, and they are deposited into the employee's account.  *See* Chris Kawashima, *Restricted Stock: RSUs and RSAs* (Jan. 10, 2025), https://www.schwab.com/learn/story/restricted-stock-units-and-awards-guide (last visited Dec. 15, 2025).

[2] At Google, RSUs are often referred to as Google Stock Units (GSUs); however, we refer to Husband's Google Restricted Stock Units as RSUs.  An RSU is a certificate that entitles a Google employee to Alphabet, Inc. capital stock.  One RSU is equivalent to one Google stock; however, the certificate is not worth anything until it vests.  The certificate represents an offer of a benefit, but it has no worth unless it vests during employment.

Wife testified regarding her reserve income, monthly expenses, and limited job-search efforts. She acknowledged her income fluctuated month to month and that her financial declarations from 2020 through 2022 reflected expenses ranging from $6,439 to $10,016. Wife also conceded she had not explored full-time civilian employment, federal employment, admission to the South Carolina Bar, legal opportunities in Georgia where her license held reciprocity, or returning to active duty. Although one child had exhibited behavioral issues in the past, Wife's mental-health expert testified the child required only periodic check-ins and that parents of similarly diagnosed children often work full-time.

Husband presented testimony from CPA Christopher Leventis, who testified the temporary orders strained Husband's finances and necessitated the sale of nonmarital RSUs. Leventis estimated Wife's average monthly expenses to be approximately $8,179. Husband also presented vocational rehabilitation expert Joel Leonard, who estimated Wife's civilian earning capacity at $101,200 annually. Husband testified he sold approximately 33,000 nonmarital RSUs to pay legal expenses and was applying for IT positions with expected salaries between $100,000 and $175,000. Wife's expert, CPA Richard Livingston, testified Husband's RSUs were reported as compensation on his pay statements and tax documents and became liquid upon vesting and deposit into his Charles Schwab account. Livingston opined vested RSUs constituted income available for support.

The parties stipulated to the characterization and distribution of Husband's marital and nonmarital RSUs and agreed to an equal division of the marital estate. Husband was granted a divorce on the ground of one-year continuous separation. The marital estate had a gross value of more than $1.7 million, with each party receiving net distributions exceeding $800,000. Wife retained her nonmarital Thrift Savings Plan and military pension, and Husband retained approximately $90,000 in nonmarital RSUs.

The family court found Wife overstated some expenses and determined her average monthly expenses to be $8,079. The court declined to impute civilian earnings to Wife but found her promotion to Colonel warranted an 11% income increase, resulting in annual income of $85,960. Prior to setting support awards, the court again emphasized Husband had been terminated from Google and had not, at that time, obtained new employment. In determining gross compensation per month, the court found "[Husband's] gross compensation from Google from his severance includes principal earnings, bonus, RSUs, and seed money from

group life and a health savings account all totaling $33,000 gross per month." Ultimately, the court ordered Husband to pay $1,500 per month in permanent periodic alimony. The court held "[t]his alimony is modifiable in the future based on a substantial and material change in circumstances." Husband was ordered to pay child support in the amount of $3,125 per month. In determining the alimony award, the family court considered the factors set forth in section 20-3-130 of the South Carolina Code.[3] The court declined to award attorney's fees to either party. Husband's motion to reconsider was denied, and this appeal followed.

[3] Our legislature has directed the family court to consider the following factors in making an award of alimony:

> (1) the duration of the marriage together with the ages of the parties at the time of the marriage and at the time of the divorce . . .;
> (2) the physical and emotional condition of each spouse;
> (3) the educational background of each spouse, together with need of each spouse for additional training or education . . .;
> (4) the employment history and earning potential of each spouse;
> (5) the standard of living established during the marriage;
> (6) the current and reasonably anticipated earnings of both spouses;
> (7) the current and reasonably anticipated expenses and needs of both spouses;
> (8) the marital and nonmarital properties of the parties, including those apportioned to him or her in the divorce or separate maintenance action;
> (9) custody of the children, particularly where conditions or circumstances render it appropriate that the custodian not be required to seek employment outside the home, or where the employment must be of a limited nature;
> (10) marital misconduct or fault of either or both parties . . .;
> (11) the tax consequences to each party as a result of the particular form of support awarded; (12) the existence and extent of any support obligation from a prior marriage or for any other reason of either party; and
> (13) such other factors the court considers relevant.

**STANDARD OF REVIEW**

"Appellate courts review family court matters de novo, with the exceptions of evidentiary and procedural rulings." *Stone v. Thompson*, 428 S.C. 79, 91, 833 S.E.2d 266, 272 (2019).  Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  *Lewis v. Lewis*, 392 S.C. 381, 385, 709 S.E.2d 650, 651 52 (2011).  "The appellant bears the burden of convincing the appellate court that the family court committed error or the preponderance of the evidence is against the family court's findings." *Greene v. Greene*, 439 S.C. 427, 439–40, 887 S.E.2d 157, 164 (Ct. App. 2023).

**LAW/ANALYSIS**

**A.      Husband's Appeal**

**1.      Alimony**

Husband argues the family court erred in awarding Wife permanent periodic alimony based on her capable earnings, education, and qualifications.  We agree.

"Generally, alimony should place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage." *Crossland v. Crossland*, 408 S.C. 443, 451, 759 S.E.2d 419, 423 (2014) (quoting *Allen v. Allen,* 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct. App. 2001)).  "Alimony should not dissuade a spouse, to the extent possible, from becoming self-supporting." *Rimer v. Rimer*, 361 S.C. 521, 525, 605 S.E.2d 572, 574 (Ct. App. 2004).  Alimony is based on both the supporting spouse's ability to pay *and* the supported spouse's demonstrated need.  *See Carter v. Carter*, 443 S.C. 585, 608, 905 S.E.2d 405, 417 (Ct. App. 2024), *cert. denied* (Mar. 12, 2025) (affirming an award of alimony where the evidence indicated Wife's need and Husband's ability to pay).

"[I]t is proper to consider a supported spouse's earning capacity and impute income to a spouse who is underemployed or unemployed." *Marchant v. Marchant*, 390 S.C. 1, 9–10, 699 S.E.2d 708, 713 (Ct. App. 2010).  "[T]he common thread in cases where actual income versus earning capacity is at issue is that courts are to

S.C. Code Ann. § 20-3-130(C) (2014).

closely examine the [party's] good-faith and reasonable explanation for the decreased income." *Kelley v. Kelley*, 324 S.C. 481, 489, 477 S.E.2d 727, 731 (Ct. App. 1996).

Based on our own view of the preponderance of the evidence, we find Wife is not entitled to alimony. Our courts have consistently emphasized that alimony is intended to provide the supported spouse with a substitute for the support incidental to the marital relationship. In *Hawley v. Hawley*, 363 S.C. 318, 323, 610 S.E.2d 309, 312 (Ct. App. 2005) and *Cohen v. Cohen*, 438 S.C. 9, 15–16, 881 S.E.2d 650, 653 (Ct. App. 2022), this court stated that alimony should place the supported spouse, as nearly as practical, in the same position they enjoyed during the marriage. Similarly, in *Rudick v. Rudick*, 437 S.C. 270, 278–79, 878 S.E.2d 686, 690 (2022), our supreme court noted that the objective of alimony is to ensure the parties separate on as equal a basis as possible, considering the supported spouse's needs and the supporting spouse's ability to pay. Here, it was established, and the court agreed as such, that the parties lived a middle-class standard of living. Each testified that they did not spend lavishly, they purchased their home in 2016 for approximately $300,000, they carried little to no debt, and they opted to save/invest throughout their marriage. Because of Husband's support obligations, Wife's standard of living improved. *See Myers v. Myers*, 391 S.C. 308, 315, 705 S.E.2d 86, 90 (Ct. App. 2011) ("[I]t is error to award [a spouse] permanent alimony substantially in excess of her needs."); *McElveen v. McElveen*, 332 S.C. 583, 600, 506 S.E.2d 1, 10 (Ct. App. 1998), *disapproved of on other grounds by Wooten v. Wooten*, 364 S.C. 532, 615 S.E.2d 98 (2005) (reducing the husband's monthly alimony obligation from $11,000 per month to $7,500 per month after finding the wife's living expenses, as stated in her financial declaration, were unnecessarily inflated); *Woodward v. Woodward*, 294 S.C. 210, 217, 363 S.E.2d 413, 417 (Ct. App. 1987) (finding permanent alimony of $3,000 per month was excessive when the wife had been awarded a fair percentage of the marital estate and such an award was "substantially in excess of her needs").

We also find the court erred in awarding Wife alimony based on the income imputed to her because Wife's capable earnings were higher than what the family court imputed to her. Wife testified at trial that she knew her temporary active-duty orders with the Air Force would end in February 2021 and that she intended to seek additional employment when that time came. Wife admitted that she only applied for two jobs throughout the pendency of this action, both at a school district doing administrative work. While she did apply for additional duty, Wife admitted she did not apply until October 2022, two years after the case commenced. As a part-time reservist, Wife only needs 24 drill days out of the year

to maintain her reservist status.  She admitted that other part-time reservists maintain full-time employment and use reserve duty to supplement their income.  Wife's part time reservist duty afforded her $77,000 in 2022 alone.  Wife also acknowledged that while she commutes to Shaw Air Force Base over an hour and a half away from her home, she never looked into employment opportunities in Augusta, Georgia, where her law degrees held reciprocity.  When asked if she explored federal opportunities, she stated, "not necessarily," and conceded she only looked into federal jobs after receiving Husband's expert's vocational rehab report.  She did not attempt to apply for a South Carolina law license, look into South Carolina jobs that do not require a license, or consider re-enlisting in active duty.  Although Husband's vocational expert testified to jobs in the civilian market in which Wife never worked, we do not believe his testimony should be discounted.  Wife is a licensed attorney and could obtain her law license in South Carolina, or she could seek attorney positions in Georgia, where her license held reciprocity.  Further, during the litigation, Wife was promoted within the USAF twice, resulting in additional imputed income.  *See Sanderson v. Sanderson*, 391 S.C. 249, 256, 705 S.E.2d 65, 68 (Ct. App. 2010) (holding prevailing job opportunities and earning levels must be considered when imputing income).  At Wife's age, and with the positive therapeutic progression of the children, we find the evidence supports that Wife was underemployed.  *See Gartside v. Gartside*, 383 S.C. 35, 45–46, 677 S.E.2d 621, 627 (Ct. App. 2009) (affirming the imputation of minimum wage income to a wife who had been out of the workforce for twenty years but was capable and energetic, based on the wife's ability to earn more than her reported income, taking into account work history and job opportunities).  Additionally, Wife testified she applied for two positions within the Lexington County School District, and should those positions come to fruition, she could gain additional income, as well.  Wife's inflated monthly expenses and underreporting of her income as noted by the family court lead us to believe she has not sincerely sought additional employment to supplement her income.  Wife's testimony reflects she was satisfied with her current lifestyle, which included the support.  Wife only had to work 4.5 weeks per year and still received an imputed annual income of approximately $85,000.  Wife is young, educated, and has the flexibility to supplement her income in numerous ways.  Based on the foregoing, we reverse the family court's award of alimony to Wife.

2.      **Restricted Stock Units**

Husband argues the family court erred in including his nonmarital RSUs as income.  We disagree.

The family court noted there are no South Carolina cases dealing with whether RSUs should be considered as income for the purposes of calculating support, noting that RSUs are different than stock options.[4] The court rejected Husband's reliance on *Shorb v. Shorb*, 372 S.C. 623, 643 S.E.2d 124 (Ct. App. 2007), which considered stock options. The issue of including stock options as *income* was not addressed in *Shorb*, but this court considered whether stock options were considered marital property, affirming the finding that nonvested stock options granted during the marriage and before the date of filing for divorce were marital property subject to equitable distribution. *Id.* at 631–32, 643 S.E.2d at 128–29. This court found the family court correctly classified the stock options as marital property and determined their value based on the date of sale or vesting. *Id.* at 634, 643 S.E.2d at 130.

Our review of the law governing this issue indicates it is not consistent among jurisdictions. Generally, "RSUs and performance shares are taxed as employment income at the time of vesting, based on the fair market value of the shares at that date. When shares are later sold, the usual rules of whether the gain is taxed as short term or long term capital gain apply." Shari A. Levitan, Kimberly R. Willoughby et. al., *Realizing the Full Value of Hard to Value Assets*, 34 J. Am. Acad. Matrim. Law. 133, 142 (2021).

We find the cases treating vested RSUs as income compelling. In *Matter of Greenberg*, 261 A.3d 293, 298 (N.H. 2021), the court treated *vested* RSUs as income for determining child support and stating that "[e]ven if we were to agree . . . that the restricted stock awards were distributed . . . in the divorce as property, doing so would not preclude the trial court from treating vested restricted stock as income for child support purposes. Under New Hampshire law, an asset may be equitably distributed to a party and the income from the asset may be used to determine child support." The court in *In re E.J.S.*, 483 P.3d 110, 114–15 (Wash. Ct. App. 2021) found RSUs were not stock options; thus, an argument regarding "double counting" was "inapposite" and vested RSUs should have been included in calculating income. The court stated the following:

---

[4] Livingston also testified that stock options and RSUs are "two completely different things" because an RSU is a share of stock with restrictions and will always have value upon vesting if the stock is worth more than zero dollars. Stock options, on the other hand, are simply the option to purchase stock at a predetermined price; and, once those options vest, they may or may not have value.

> Contrary to [the] suggestion that [the] vested and
> delivered RSUs count as income for child support
> purposes only if the shares of stock [the wife] received
> are actually liquidated, we conclude the trial court abused
> its discretion in omitting [the] vested and delivered RSUs
> from the income calculation. Consistent with the federal
> income tax standards, her vested and delivered RSUs
> count as income for child support purposes whether or
> not simultaneously liquidated.

*Id.*; *see Vanderveer v. Vanderveer*, 964 N.W.2d 694, 712 (Neb. 2021) (finding a portion of the husband's RSUs was includable in his total income for purposes of calculating child support where the husband regularly received annual grants of RSUs from employer, husband's RSU income averaged more than $357,000 annually over the prior three years, and there was no evidence that the pattern was likely to change in future, even though the trial court classified husband's unvested RSUs during a four-year period as marital property and equitably divided them); *Hoegen v. Hoegen*, 43 N.E.3d 718, 722 (Mass. App. Ct. 2016) (finding RSUs were part of the husband's compensation as regularly earned income as seen on his paystubs and stating, "these monies should have been included as gross income, along with his base salary and bonus compensation, in calculating his child support obligation").

We recognize Husband cites cases that support his argument; however, we find them less persuasive. *See In re Marriage of Micheli*, 15 N.E.3d 512, 520 (Ill. App. Ct. 2014) (considering the equitable distribution of *unvested* stock options and RSUs); *Gross v. Zimmerman*, 197 So. 3d 1248, 1254–55 (Fla. Dist. Ct. App. 2016) (affirming the trial court's refusal to consider RSUs received by the father as income for purposes of determining child support, finding they were "promises by the father's employer to deliver shares of the employer's company stock in the future").

To the extent Husband relies on *Penner v. Penner*, 411 S.W.3d 775, 781 (Ky. Ct. App. 2013), in which the court remanded to the trial court to divide RSUs upon vesting and "not include the stock as income to either party," we note it was called into doubt by *Normandin v. Normandin*, 634 S.W.3d 589, 600 (Ky. 2020), *opinion modified and superseded on denial of reh'g* (Apr. 29, 2021), which held that "RSUs should have been treated as deferred marital income" and considered "in determining child support." *See Duffy v. Duffy*, 540 S.W.3d 821, 830 (Ky. Ct.

App. 2018) (finding "the trial court properly realized that the RSUs could not be included as a marital asset and also attributed to [the father] as income").[5]

Like the family court, we find the vested RSUs may be considered as income because they were reflected as compensation on Husband's contracts, W-2s, and his tax returns as earned income; he received the funds in lieu of other forms of compensation; and he paid taxes on them as income when they vested. Accordingly, we affirm the award of child support. [6]

### B.    Wife's Appeal

Wife argues the family court erred in failing to award her attorney's fees and costs.[7] We disagree.

Each party contends the other party prolonged the litigation and hampered final resolution of the issues. Wife argues Husband requested DNA testing of the parties' oldest child; served Wife with a preservation letter regarding her electronic devices; and subpoenaed the same information from AT&T, requiring Wife to move to quash to protect confidential USAF information on her cellular phone. He also filed numerous motions regarding modifying temporary relief and requesting alteration or amendment of temporary orders; belatedly named a vocational expert to support his claim that Wife should be earning more money; required Wife to subpoena Google to learn the details of his termination and severance package; and presented an in-kind division of Wife's retirement on the eve of trial. Husband argues Wife's behavior prior to filing was posturing her case, including having local police conduct a welfare check on Husband; alleging abuse despite any verifiable evidence, which led to Husband's supervised visitation for nine months; purposely waiting to file her action until Husband was earning his highest earnings; not being candid about her earnings; refusing to cooperate in the discovery process regarding her electronic devices in particular; allegedly refusing

---

[5] We note the court in *Duffy* relied on *Penner*.

[6] Husband further argues that to the extent the temporary orders of child support were overpaid because of the family court's inclusion of the RSUs as income, he overpaid $32,304 of child support. Because we hold the family court did not err by finding the RSUs properly included in Husband's income, we need not address this argument. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when disposition of a prior issue is dispositive).

[7] We combine Wife's first and second issues on appeal.

to attend her own deposition or submit to a vocational interview; and submitting allegedly unreasonable proposals for the parties' three mediations.

"[A]ttorney's fees may be assessed against a party in an action brought in the family court." *Patel v. Patel*, 359 S.C. 515, 533, 599 S.E.2d 114, 123 (2004) (citing S.C. Code Ann. § 20-7-430(38) (Supp. 2023)). "In determining whether an attorney's fee should be awarded, the following factors should be considered: (1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; [and] (4) [the] effect of the attorney's fee on each party's standard of living." *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). "[T]he family court must make specific findings of fact on the record for each of the required factors." *Thornton v. Thornton*, 428 S.C. 460, 477, 836 S.E.2d 351, 360 (Ct. App. 2019). "Failing to cooperate and prolonging litigation can serve as an additional ground for awarding attorney's fees." *Daily v. Daily*, 432 S.C. 608, 630, 854 S.E.2d 856, 868 (Ct. App. 2021).

Here, the family court considered the factors established in *E.D.M.* The court found each party had the ability to pay their fees based on the value of the marital estate. In particular, the court noted that Husband was unemployed, had been required to liquidate the nonmarital portion of his RSUs to pay expenses, and owed $83,000 in tax debt. In comparison, Wife had $115,000 in checking and savings accounts. The court next noted that although Wife received the most beneficial results, Husband also received some beneficial results. Regarding the third factor, the court found each party would have more than $800,000 at their disposal. In addition, the court noted that although Husband had an excellent financial situation prior to the proceedings, that had changed over the course of litigation. In comparison, Wife was in good financial shape. Finally, the court found an award of fees to either party would affect the other party's standard of living. Our de novo review leads us to the same conclusion regarding the equities, and we find the family court did not err in denying Wife an award of attorney's fees and costs. *Id.* at 631, 854 S.E.2d at 869 (reviewing an award of attorney's fees in a family court action based on our de novo review).

**CONCLUSION**

We affirm the family court's inclusion of vested RSUs in its calculation of Husband's income, affirm the denial of Wife's request for attorney's fees and costs, and reverse the award of alimony to Wife.

**AFFIRMED IN PART, REVERSED IN PART.**

**WILLIAMS, C.J., and CURTIS, J., concur.**